UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
# RECEIVED

SAMUEL WHITE

NOV 2 4 2015 EAA
11-24-15
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

15cv10622
Judge Rebecca R. Pallmeyer
Magistrate Judge Maria Valdez
PC1

vs.

(To be supplied by the ___

(#1) MᶜDEVITT B #13197

(#2) T.P CAREY #18795   (#7) K.A RICHARDT #19385

(#3) EJ MAY #16474   (#8) JENNIFER HAMELLY

(#4) E.L FlAGG 12037   (#9) LAUREN BROWN
                       (#10) MARK ANDERSON

(#5) D. OTERO #10058   (#11) MICHAEL PATTAROZZI

(#6) E. LOPEZ #6711   (#12) SGT. MARK LAMBERG STAR # 1847

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**

X   **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
U.S. Code (state, county, or municipal defendants)

_____   **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
**28 SECTION 1331** U.S. Code (federal defendants)

_____   **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR*
*FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

ORiginal Complaint

13 copys

I. **Plaintiff(s):**

A. Name: Samuel WHite

B. List all aliases: _____

C. Prisoner identification number: K55010

D. Place of present confinement: PincKNEyVille

E. Address: P.O. Box 999 PincKNEyville, ILL 62274

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**

(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in B and C.)

A. Defendant: BRIAN MCDEVITT STAR #13197

Title: CHicago police officer

Place of Employment: CHicago police DEPARTMENt

B. Defendant: T.P. CAREY STAR# 18795

Title: CHicago police officer

Place of Employment: CHicago police DEPARTMENt

C. Defendant: E.J MAY # STAR 6474

Title: CHicago Police officer

Place of Employment: CHicago police DEPARTMENt

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9/2007

ADDITIONAL DEFENDANTS

D. Defendant: E.L FLAGG #STAR 12037
Title: Chicago Police Officer
Place of Employment: Chicago Police Department

E. Defendant: D. OTERO #STAR 10058
Title: Chicago Police Officer
Place of Employment: Chicago Police Department

F. Defendant: E. LOPEZ #STAR 6711
Title: Chicago Police Officer
Place of Employment: Chicago Police Department

G. Defendant: K.A. RICHARDT #STAR 19385
Title: Chicago Police Officer
Place of Employment: Chicago Police Department

H. Defendant: JENNIFER HAMELLY
Title: Assistant State's Attorney
Place of Employment: Cook County States Attorney Office

I. Defendant: LAUREN BROWN
Title: Assistant State's Attorney
Place of Employment: Cook County State's Attorney Office

J. Defendant: MARK ANDERSON
Title: Assistant State's Attorney
Place of Employment: Cook County State's Attorney Office

K. Defendant: MICHAEL PATTAROZZI
Title: Assistant State's Attorney
Place of Employment: Cook County State's Attorney Office

L. Defendant: MARK Lamberg
Title: Chicago Police Sgt.
Place of Employment: Chicago police Department

PREVIOUS LAWSUITS

II

1  WHITE -v- BRILEY       Filed ~~2013~~ 1999     Settled

2  WHITE - v - WINTER     Filed 2003       Dismissed

3) WHITE -v- Clark/Curry   2003        Dismissed

Petition cant really recall off hand

Which an what date correctly These

complaint been filed an ended Due

To plaintiff were discharge from

custody in 2006 an lost All The

Documents

Samuel Buhot

IV.    **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

ON MARCH 21, 2012 plaintiff SAMUEL WHITE, WAS SITTING IN His courtyard AT 6527 S. CALIFORNIA CHICAGO, ILLINOIS listen to music ON His I.pod Around 10:30 p.m When A ~~Detec~~ DETECTIVE CAR pulled directly infront of His building an gotten out of there ~~marked~~ CAR. DET. McDEVITT Reached his hand over THE GATE AN let Himself into plaintiff Courtyard Along with his partners DET. MAY, DET. CAREY Which They the DEFENDANTS order plaintiff to stand up to place Him in Restraints to perform A Custodial ~~po~~ SEARCH which Revealed plaintiff Had NOTHING ILegal IN OR ON his possession. AT THAT Time plaintiff Asked DEFENDANT #1 McDEVITT, #2 CAREY, #3 MAY, Why ARE THEY IN My COURTYARD without A SEARCH WARRANT OR AN ARREST WARRANT FOR Plaintiff, THEN There Radio Reported Shot fired AT 6535 S. CALIFORNIA AVE CHicago, ILLINOIS AN That Suspect is ON THE Back porch with the gun IN HAND. plaintiff THEN ASK THE Said THREE DEFENDANTS #1 McDEVITT #2 CAREY #3 MAY TO Remove The RESTRAINTS

4

FROM his WRIST, That THE DEFENDANTS #1, #2, #3
WAS Supposed to been AT 6535 S. CALIFORNIA AVE NOT
6527 S. CALIFORNIA AVE Chicago, Illinois plaintiff
WAS TOld by defendants #1, #2 #3 To ShuT His
MOUTH That HE is going To Jail foR being A SmART
ASS FoR Tell THE police what They CAN AN CANNOT
DO. plaintiff WAS THEN TAKEN TO THE police STATION
WHERE plaintiff LEARNED THAT DEFENDANT #1 McDEVITT
HAd Charged Him with ①UUW By FELON, ② POSSESSION
of Controlled Substance ③POSSESSION of Controlled
Substance that WAS NOT RECOVERED from plaintiff
Custodial SEARCH At 6527 S. CALIFORNIA AVE Chicago
Illinois by NiETher OF THE DEFENDANTS #1, #2, #3, #4
#5, #6, #7.

① plaintiff WAS charged by Complaint by DEFENDANT
#1 McDEVITT Under CASE #12111051601
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀(Exhibit A)

② ON MAY 1, 2012 AT BRANCH 48 RM 2 Charges WAS NOllE
PROSEQUi under CASE #12111051601 due to DEFENDATS #1
#2 #3 #4 #5 #6 #7 Failed To Appear AN TESTIFY FOR THE
PROSECUTOR IN preliminary.
(Exhibit D, E, F G) (Exhibit L Pg G4)

Revised 9/2007

ADDITIONAL STATEMENT OF CLAIMS

#3 DEFENDANTS #2 CAREY, #3 MAY #4 FLAGG #5 OTERO #6 LOPEZ #7 RICHARDT, FAILED TO ALERT THEY SUPERVISOR THAT THE plaintiff HAD been unlawfully DETAINED by defendant #1 MCDEVITT.

#4 DEFENDANT #8 Hamelly APPEARED before THE GRAND JURY ON MAY 15, 2012, HAD plaintiff indicted AFTER THE LEAD CHARGES UNDER CASE #1211051601 WAS NOLLE PROSEQUI MAY 1, 2012 AT BR. 48 RM 2 (EXHIBIT D, E, F, G, I, H)

#5 Plaintiff WAS indicted under CASE #12CR094590 FOR ARMED Habitual by AN COOK COUNTY GRAND JURY AFTER The controlling charges ① UUW by Felon, ② possession of controlled substance ③ possession of controlled substance. under complainting CASE #1211051601 WAS NOLLE prosequi ON MAY 1, 2012 AT BR. 48 RM. 2 (Exhibit I, D, E, F, G)

#6 DEFENDANT #9 BROWN Had plaintiff ARRAINED ON the INDICTMENT FOR ARMED Habitual under CASE #12CR094590 ON JUNE 5, 2012 AN defendant HAD knowledge THAT THE complainting LEAD-Charges under CASE #1211051601 WAS NOLLE PROSEQUI (Exhibit I, D, E, F, G)

#7 DEFENDANTS #10 ANDERSON, #11 PATTAROZZI Both WAS AWARE that the LEADING CHARGES WAS NOLLE PROSEQUI ON MAY 1, 2012 AN insisted to TAKE plaintiff to trial ON NOV. 19, 2012 AN Allowed plaintiff to be wrongfully CONVICTED ON ILLEGAL CHARGES. (EXHIBIT D, E F G)

#8 DEFENDANTS #10 ANDERSON, #11 PATTAROZZI WAS AWARE THAT THE Evidence used to CONVICT plaintiff Had been charged to A PERSON by THE NAME of VALADEZ, THAT THE charges WAS NOT APPROVED FOR VALADEZ According THE police REPORTS (Exhibit A Pg 2) (EXHIBIT L pg G23, 35, 36, 37, 49)

#9 DEFENDANT #4 FLAGG TESTIFIED ON DEC. 18, 2012 AL plaintiff trial that NIETHER DEFENDANTS #1, #2, #3, #4, #5, #6, #7 EVER RECOVER AN GUN OR DRUGS ON MARCH 21, 2012, DEFENDANT #4

FLAGG NEVER REPORTED TO HIS SUPERVISOR ABOUT the plaintiff being unlawful Detained by DEFENDANT #1 ~~DAVE~~ McDEVITT (Exhibit M pg 7-8)

#10   DEFENDANT(S) #8 Hamelly, #9 BROWN #10 ANDERSON #11 PATTAROZZI WAS AWARE THAT NONE OF THE EVIDENCE EVEN EXISTED. (Exhibit K, J, A pg 2, B)

#11   DEFENDANT #12 Lamberg DESTROYED plaintiff complaint that WAS FORWARD to Him via mail FROM pinckneyville C.C Against DEFENDANTS #1, #2, #3, #4, #5, #6, #7. DEFENDANT lamberg claimed TO HAVE closed plaintiff complaint out STATING HE NEVER RECEIVED THE complaint. (Exhibit #1)

**V.    Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

(1) EAch individual Compensate plaintiff $1,000.00 per day
INCARCERATEY (2) EAch individual COMPENSATE $~~1,000,000~~
~~EACH~~ 1 Million dollar per DEFENDANT For unlawful DEtention
(3) 1 Million dollar per DEFENDANT For wrongful CONVICTION

**VI.    The plaintiff demands that the case be tried by a jury.** ☑ YES    ☐ NO

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this _18th_ day of _NOV_, 20 _15_

_Samuel Bechit_
(Signature of plaintiff or plaintiffs)

_SAMUEL WHiTE_
(Print name)

_K55010_
(I.D. Number)

_P.O. BOX 999_
_PiNCKNEYVille, ILLiNOiS 62274_
(Address)

Revised 9/2007

E. Is the grievance procedure now completed? YES ( ) NO (✓)

F. If there is no grievance procedure in the institution, did you complain to authorities? YES ( ) NO (✓)

G. If your answer is **YES**:

1. What steps did you take?

Complaint is against Chicago police, Cook County STATE'S ATTORNEY

2. What was the result?

H. If your answer is **NO**, explain why not:

Complaint is against Chicago police, Cook County STATE'S ATTORNEY

# SWORN AFFIDAVIT FOR COMPLAINT LOG INVESTIGATION
## CHICAGO POLICE DEPARTMENT

**STATE OF ILLINOIS**

**COUNTY OF COOK**            )   CC

Location of Incident
6527 S. California Chicago, Il.

Date
21 Mar 2012

Time
2235

Summary of Statement(s):

I WAS SITTING IN MY COURTYARD LISTEN TO MY I-POD WHILE I WAS
TALKING TO A GENTLEMAN, AT THAT TIME I NOTICED OFFICER MC DEVITT,
OFFICER E. J. MAY AND T. CAREY, E. FLAGG pulled up infront of the
Building AND Exit They CAR he forced open The GATE, ORDER ME
TO STAND up TO BE SEARCHED ALONG with THE SAID SECOND SUSPECT.
I ASKED WHY WERE I being SEARCHED, I Explained TO These officers
THAT I AM COMMITT NO CRIME, THAT I HAVE NOThing, ILLegal on
ME. THEN I WAS told by officer MCDEVITT TO Shut The Fuck up
THAT I WAS going To Jail for being A SMART ASS. I only told
THESE officers THAT THEY Radio the JUST STATED THAT Shot Fired AT

I, **SAMUEL WHITE** hereby state as follows:

1. I have read the above summary and/or attached statement(s) in its entirety, reviewed it for accuracy and been given an opportunity to make corrections and additions to the statement(s).

2. Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the information set forth in the statement(s) above and/or attached summary are true and correct, except as to any matters therein stated to be on information and belief as to such matters, I certify as aforesaid that I verily believe the same to be true.

SAMUEL WHITE
Print Affiant's Name

Samuel Berhito
Affiant's Signature

3-25-15
Date

NOTARY

CPD-44.126 (Rev. 7/09) English

Jarrod Selley
Print Witness' Name

Selley
Witness' Signature

3-25-15
Date

OFFICIAL SEAL
LINDA FRITTS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/20/15

March 2015

Attachment No. 94

Complaint Log No. 1073638

Ex # 1

6535 S. CALIFORNIA AVE AN THE SUSPECT IS A BLACK
Male with DREADS AN WHITE T-Shirt ON STILL ON
THE PORCH with THE GUN IN HAND PER THE 911
CALLER

I WAS THEN TAKEN TO THE POLICE
STATION WHERE I LEARNED THAT ONE WAS BEING
CHARGED with DRUGS AND GUN by OFFICER MCDEVITT,
OFFICER E.J MAY, T. CAREY, K RICHARDT, E. FLAGG,
OTERO, LOPEZ HAD All TOLD ME THEY TRIED TO
TALK OFFICER MCDEVITT NOT TO PLANT THE DRUGS
AND GUN ON ME BECAUSE HE did NOT Find THAT ON
ME, THAT THEY CANT VOUCH FOR THE DRUGS AND
THE GUN, THESE OFFICERS STATED THAT I had PISSED
OFFICER MCDEVITT OFF, NIETHER OF THESE SAID —
OFFICER ALERT THEY SUPERVISOR THAT OFFICER MCDEVITT
FILED A FALSE COMPLAINT AGAINST ME by PLANTING
CHARGES ON ME FOR DRUGS AN GUN. By THESE SAID
OFFICERS had Knowledge THEY NEVER RECOVERED
ANY DRUGS NOR A GUN during MY ARREST (SEE EXHIBIT B)

1) OFFICER MCDEVITT ~~WAS~~ Falsified in his ARREST REPORT
THAT HE WAS RESPONDING TO SHOT FIRED AT 6527 S.
CALIFORNIA (SEE EXHIBIT A)

2) OFFICER MCDEVITT USED SOMEONE E ELSE ARREST

REPORT. And placed my NAME IN THE REPORT, which
Clearly STATED THAT The CHARGE FOR VALADEZ. UUW
WERE NOT APPROVED DUE TO Lack of Evidence AND
DRUGS (SEE Exhibit A pg 2)

3) OFFICER MCDEVITT Filed TWO different CASE
REPORTS The FIRST ONE hAd NO RECOVERY Numbers
For ANYThing ILLEGAL (SEE Exhibit B)

4) Officer McDEVITT Filed his SECOND CASE REPORT
Alleging He RECOVERED dRugs AND Gun under
INVENTORY Number 12563468 - 12563488 which
WERE changed TO A person in (Exhibit A) of
VALADEZ. But The chARged INVENTORY Numbers
WERE placed under my NAME (SEE Exhibit C)

5) OFFicer McDEVITT Admitted THAT He was Dispatched
To 6535 S. CAliforNIA OF Shots FIRED IN (Exhibit C)
But lied IN (Exhibit A) THAT HE WERE Responding
to Shot FIRED AT 6527 S. CALIFORNIA

6) OFFicer MCDEVITT, E.J. MAY, T.CAREY, K. RichARDT,
E. FLAGg, OTERO, LOpez. NEVER APPEARED To testify
For The prosecutor on MAY 1, 2012 AT BRANCH
(48) The chARges WERE DROPPED under case #12MC5011
(SEE Exhibit D, E, F G)

7) OFFICER MC DEVITT WENT bEFORE THE GRAND JURY AND COMMITTED PERJURY ON MAY 15, 2012 STATING HE CAUGHT ME WITH drugs AND GUN (SEE Exhibit) H, E J, K

8) DURING MY TRIAL NOV. 19, 2012 OFFICER MCDEVITT TESTIFIED HE WERE RESPONDING TO SHOTS FIRED AT 6535 S. CALIFORNIA AN HE did NOT TAKE down THE SECOND SUSPECT NAME NOR did HE KNOW THE SECOND SUSPECT, TO SAY THAT THIS VALADEZ PERSON IN (Exhibit A) IS NOT THE SECOND SUSPECT. (SEE Exhibit L G9 through G50)

9) OFFICERS' E. J. MAY, T. CAREY, K. RICHARDT, OTERO, LOPEZ did NOT TESTIFY AT MY TRIAL ON THE DATE OF NOV 19, 2012. TO CONFIRM MCDEVITT CLAIMS OF FINding drugs AN GUN.

10) OFFICER E. FIAGG TESTIFIED AT MY TRIAL ON DEC 19, 2012 STATING THAT HE did NOT SEE A GUN THAT NIGHT OF MARCH 21, 2012 NOR WAS A GUN OR ANYTHING RECOVERED THAT NIGHT AND NOR did ANY OF THE OFFICERS GO INTO THE HALLWAY (SEE Exhibit M) OFFICER FIAGG ALLOWED ME TO BE UNLAWFUL CHARGED WITH A PLANT CASE ILLEGAL OBTAINED EVIDENCE, did NOT REPORT THIS TO HIS SUPERVISOR

11) THE ILLINOIS STATE Police Responded ThAT Officer McDEVITT NOR The Chicago Police DEPARTMENT TURN OVER A Gun TO THEM. (SEE Exhibit J, K)

12) NIETHER OF THE MENTIONED OFFICER ATTEMPT STOP ME from being charged With An unlawful charge And Wrongfully convicted

Samuel Bukit

3X WITTNESS

(1) BARBARA TAYLOR

(2) FAIRY STENNIS

(3) DIANE WALTON

# CHICAGO POLICE DEPARTMENT
## ARREST REPORT

**FINAL APPROVAL**

3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11. 420C(REV. 8/30)

CB #: 18368311
IR #: 1081608
YD #:
RD #: HV208784
EVENT #: 1208120428

### ARREST REPORTING

**OFFENDER**

**Name:** WHITE, Samuel R
a.k.a Riley
**Res:** 6527 S California Ave, #1
Chicago, IL 60629
None
**DOB:** 11 October 1977
**AGE:** 34 years
**POB:** Illinois
**ARMED WITH** Handgun

**Beat:** 831

Male
Black
5' 11"
190 lbs
Brown Eyes
Black Hair
Bald Hair Style
Medium Brown
Complexion

MAR 2 2012

**Marks:** Tattoo Bd on Upper Left Arm

**INCIDENT**

**Arrest Date:** 21 March 2012 22:35
**Location:** 6527 S California Ave
Chicago, IL 60629
291 - Residential Yard (Front/Back)
**Holding Facility:** District 008 Lockup
**Resisted Arrest?** No

**TRR Completed?** No
**Beat:** 831

**Total No Arrested:** 1

**Dependent Children?** No

**Co-Arrests**  **Assoc Cases**
**DCFS Ward ?** No

12110516

**CHARGES**

| | Offense As Cited | | Victim |
|---|---|---|---|
| 1 | **720 ILCS 5.0/24-1.1-A** | UUW - WEAPON - FELON, POSSESS/USE FIREARM Class F - Type F | State Of Illinois, P.O.Mcdevitt#13197 |
| 2 | Offense As Cited | **720 ILCS 570.0/402-C** | State Of Illinois, P.O.Mcdevitt#13197 |
| | | PCS - POSSESSION - POSS AMT CON SUB EXCEPT (A)(D) Class 4 - Type F | |
| 3 | Offense As Cited | **720 ILCS 550.0/4-C** | State Of Illinois, P.O.Mcdevitt#13197 |
| | | CANNABIS - POSSESS 10-30 GRMS Class A - Type M | |

**FELONY REVIEW**

**Felony Review :** Approved  22 MAR 2012 00:12  Keough,  State's Attorneys's Office

**RECOVERED NARCOTICS**

| Type | Approx. Weight/Quantity | Units | Estimated Street Value |
|---|---|---|---|
| Suspect Controlled Substance | 6 | HITS/PILLS | $50.00 |

3

**Print Generated By:** WALANO, Michael ( PC0U994 )

Page 1 of 5

 

powered by: CLEAR Technology

22 MAR 2012 03:05

# Chicago Police Department - ARREST Report

**ARREST REPORTING**

CB #: 18368311
WHITE, Samuel

## WARRANT

NO WARRANT IDENTIFIED

## VICTIM AND COMPLAINANT

Name: STATE OF ILLINOIS, P.O.Mcdevitt#13197

| | |
|---|---|
| | Injured? No    Deceased? No |
| DOB: | |
| Age: | Hospitalized? No |
| Comments: | Treated and Released  No |

## ARRESTEE VEHICLE

NO ARRESTEE VEHICLE INFORMATION ENTERED

## PROPERTIES

**Confiscated Properties :**
All confiscated properties are recorded in the e-Track System. This system can be queried by the inventory number to retrieve all official court documents related to evidence and/or recovered properties.

PROPERTIES INFORMATION FOR    WHITE, Samuel,    NOT AVAILABLE IN THE AUTOMATED ARREST SYSTEM.

## INCIDENT NARRATIVE

(The facts for probable cause to arrest AND to substantiate the charges include, but are not limited to, the following)

EVENT: 20428    ADDRESS OF ARREST: 6527 S. CALIFORNIA□
***********HISTORY OF ARREST***********□
IN SUMMARY, R/O'S RESPONDED TO A CALL OF "SHOTS FIRED" AT THE ABOVE LOCATION. R/O'S OBSERVED THE ABOVE OFFENDER STANDING IN COURT YARD OF APARTMENT COMPLEX. R/O'S EXITED VEHICLE AND APPROACHED TO CONDUCT A FIELD INTERVIEW.AS R/O'S NEARED ABOVE OFFENDER, OFFENDER LOOKED IN R/O'S DIRECTION REACHED INTO HIS WAIST BAND REMOVED A SMALL REVOLVER AND WALKED TO COMMON HALLWAY DOOR. ABOVE OFFENDER OPENED DOOR AND TOSSED THE GUN INTO THE HALLWAY. THE ABOVE WAS DETAINED. R/O RECOVERED THE SAID HANDGUN IN HALLWAY AND FOUND IT TO BE A H&R YOUNG AMERICAN .22CAL REVOLVER LOADED WITH 7 LIVE ROUNDS. ABOVE OFFENDER PLACED INTO CUSTODY. READ RIGHTS PER MIRANDA. A CUSTODIAL SEARCH REVEALED ONE PLASTIC BAG THAT CONTAINED (12) KNOTTED BAGS EACH WITH GREEN LEAFY SUBSTANCE SUSPECT CANNABIS AND ONE PLASTIC BAG WITH 6 MULTI-COLORED PILLS SUSPECT ECSTACY. NAME CHECK CLEAR OF WARRANTS AND ALERTS. ABOVE NOT ON G.I.I.P. ABOVE OFFENDER WAS CONVICTED FELON UNDER 94CR1414003 FOR MURDER. GUN DESK CAN NOT RUN GUN DUE TO NO SERIAL NUMBER ON HANDGUN   CHARGES APPROVED PER ASA KEOUGH AT 0012HOURS.[CHARGES NOT APPROVED FOR VALADEZ UUW DUE TO LACK OF EVIDENCE. INV#12568468-HANDGUN/AMMO INV#12568488-DRUGS ]

# Chicago Police Department - ARREST Report

CB #: 18368311

WHITE, Samuel

## ARREST REPORTING

**COURTINFO**

Desired Court Date:     19 April 2012

Branch:  48-4     155 W 51ST ST - Room

Court Sgt Handle?  No

Initial Court Date:  22 March 2012

Branch:  CBC-1 2600 S CALIFORNIA - Room

Docket #:

**BONDINFO**

**BOND INFORMATION NOT AVAILABLE**

## ATTESTING OFFICER:

I hereby declare and affirm, under penalty of perjury, that the facts stated herein are accurate to the best of my knowledge, information and/or belief.

Attesting Officer:          #18795     CAREY, T P (PC0I311)          22 MAR 2012 00:37

## ARRESTING OFFICER(S)

| | | | | Beat |
|---|---|---|---|---|
| 1st Arresting Officer: | #13197 | MCDEVITT, B P (PC0Y241) | | 0806D |
| 2nd Arresting Officer: | #18795 | CAREY, T P (PC0I311) | | 0806D |

## APPROVING SUPERVISOR:

Approval of Probable Cause : #715     KOCH, G J (PC0P560)          22 MAR 2012 00:38

60F10

Chicago Police Department - ARREST Report

CB #: 18368311
WHITE, Samuel

## ARREST PROCESSING REPORT

Holding Facility: District 008 Lockup
Received in Lockup: 22 March 2012 00:43
Prints Taken: 22 March 2012 01:01
Palmprints Taken: Yes
Photograph Taken: 22 March 2012 01:00
Released from Lockup:

Time Last Fed: 22 March 2012 00:43
Time Called:
Cell #: 7                           Phone#:

Transport Details : 2PO    0832    21-MAR-2012 22:45

### VISUAL CHECK OF ARRESTEE

| | |
|---|---|
| Is there obvious pain or injury? | No |
| Is there obvious signs of infection? | No |
| Under the influence of alcohol/drugs? | No |
| Signs of alcohol/drug withdrawal? | No |
| Appears to be despondent? | No |
| Appears to be irrational? | No |
| Carrying medication? | No |

### ARRESTEE QUESTIONNAIRE

| | |
|---|---|
| Presently taking medication? | |
| (if female)are you pregnant? | No |
| First time ever been arrested? | No |
| Attempted suicide/serious harm? | No |
| Serious medical or mental problems? | No |
| Are you receiving treatment? | No |
| | No |

### RETURN TO HOLDING FACILITY COMMENTS:

### QUESTIONNAIRE REMARKS:

### LOCKUP KEEPER COMMENTS:

### EMERGENCY CONTACT:

Name : REFUSED
Res:
                              Beat:

NO INTERVIEWS LOGGED

NO VISITORS LOGGED

Print Generated By: WALANO, Michael ( PC0U994 )

powered by CLEAR Technology

22 MAR 2012 03:05

# Chicago Police Department - ARREST Report

## ARREST PROCESSING REPORT

CB #: 18368311

WHITE, Samuel

### MOVEMENT LOG

MOVEMENT LOG INFORMATION NOT AVAILABLE

### WC COMMENTS

Watch Commander Comments:

REL W/O CHARGING

DOES NOT APPLY TO THIS ARREST

### ARRESTEE PROCESSING PERSONNEL

| | | | Beat |
|---|---|---|---|
| Searched By: | | | |
| Lockup Keeper: | | MARTIN, R (PC0W029) | |
| Assisting Arresting Officer: | #18674 | JOY, D A (PC0J565) | |
| Assisting Arresting Officer: | #10058 | OTERO, D (PC0X400) | |
| Assisting Arresting Officer: | #12037 | FLAGG, E L (PC0X830) | 0832 |
| Assisting Arresting Officer: | #16474 | MAY, E J (PC0E005) | 0865C |
| Assisting Arresting Officer: | #19385 | RICHARDT, K A (PC0X942) | 0806D |
| Fingerprinted By: | #6711 | LOPEZ, E (PC0AD82) | 0865C |
| | | MARTIN, R (PC0W029) | 0832 |

### APPROVAL PERSONNEL

| | | | Beat |
|---|---|---|---|
| Final Approval of Charges : | #715 | KOCH, G J(PC0P560) | 22 MAR 2012 03:03 |

CHICAGO POLICE DEPARTMENT
CPD-34.523 (REV. 10/09)

INV NO **12568488**

INVENTORY NO
**12568488**

DATE RECOVERED
**21-MAR-2012**

| ITEM ID | QUANTITY | DESCRIPTION OF PROPERTY | PKG NO | PKG NO RD | RE-INVENTORY OF: | UNIT 008 |
|---|---|---|---|---|---|---|

PKG NO: **HV208784**

| ITEM ID | QUANTITY | DESCRIPTION OF PROPERTY |
|---|---|---|
| 5474070 | 1 | NARCOTIC / DRUG : CLEAR BAG CONTAINING 6 MULTICOLORED PILLS SUSPECT ECSTACY |
| 5474069 | 12 | NARCOTIC / DRUG : KNOTTED BAGS CONTAINING GREEN LEAF/LIKE SUBSTANCE SUSPECT CANNABIS |
| 5474068 | 1 | NARCOTIC / DRUG : CLEAR PLASTIC BAGGIE |

COMMENTS:

Court Branch: 48-4    Court Date: **19-APR-2012**

CURRENCY:

EVIDENCE & RECOVERED PROPERTY SECTION USE ONLY

$ DEPOSITED AMT          $ INVENTORY AMT

IUCR: **143A**    WEAPONS VIOLATION UNLAWFUL POSS OF HANDGUN

STATE CHARGES: **720 ILCS 5.0/24-1.1-A**

RECOVERED/SEIZED FROM - NAME: **WHITE, SAMUEL**

CHARGE TYPE: **FELONY**
INCHOATE: **OFFENSE AS CITED**

OWNER'S NAME: **WHITE, SAMUEL**
ADDRESS: AT **6527 S CALIFORNIA AVE CHICAGO, IL 60629**
BEAT OF RECOVERY **831**

FOUND BY - NAME: **MCDEVITT, BRIAN    Star: 13197**
ADDRESS: **6527 S CALIFORNIA AVE CHICAGO, IL 60629**
TELEPHONE NO.

☑ CHECK IF C.P.D.

FOUND BY - NAME    ADDRESS    TELEPHONE NO.

☑ HOLD FOR INVESTIGATION AND/OR EVIDENCE (IF NOT NEEDED FOR INVESTIGATION/EVIDENCE, LEAVE BLANK)

INVESTIGATING OFFICER -
**MCDEVITT, BRIAN**
STAR NO. **13197**
UNIT **008**
1st OFFICER'S NAME **MCDEVITT, BRIAN**
STAR NO. **13197**
UNIT **008**
JUDGE

SEE COPY 4 FOR NOTICE TO FINDER

☐ PROPERTY AVAILABLE FOR RETURN TO OWNER

SIGNATURE Electronic Approval
2nd OFFICER'S NAME **CAREY, THOMAS**
STAR NO. **18795**
UNIT **008**

☐ TO BE DISPOSED OF BY CUSTODIAN (NOT TO BE RETURNED) (THIS APPLIES IF PROPERTY IS NOT EVIDENCE, NOT RETURNABLE AND/OR OWNER IS UNKNOWN)

SIGNATURE Electronic Approval

INITIAL DESTINATION OF PROPERTY -
FORENSIC SERVICES SECTION

SIGNATURE Electronic Approval
APPROVING DESK SERGEANT
**WALANO, MICHAEL**
STAR NO. **13082**
DATE **22-MAR-2012**
TIME **00:25**

VIA
☑ POLICE MAIL
☑ E & RPS PICKUP
☐ RECOVERING UNIT PERSONNEL
☐ EVID./LAB TECHNICIAN

Created by: PC2Y241

COPY 1 - KEEP WITH PROPERTY

COURT ORDER - DISPOSAL INSTRUCTIONS

MY SIGNATURE HEREON ACKNOWLEDGES RECEIVING ALL PROPERTY DESCRIBED IN THIS INVENTORY
X _____ RECIPIENT'S SIGNATURE
ADDRESS - STREET          CITY          STATE          ZIP

OFFICER'S SIGNATURE -    STAR - UNIT
X _____ DATE RECEIVED

WATCH COMDR'S APPROVAL SIGNATURE (EXEMPT RANK REQUIRED FOR FIREARMS)
X _____

OFFICER'S SIGNATURE -    STAR    UNIT
X _____

E. & R.P.S USE ONLY
OFFICER'S SIGNATURE -    STAR    UNIT

(B2)          KSSN10

4 of 6

Printed by: IL0163ABFN  04-JUN-2012 15:01

CHICAGO POLICE DEPARTMENT
CPD-34.523 (REV. 10/09)

**INV NO 12568468**

| | | |
|---|---|---|
| PKG NO. | RD NO. | RE-INVENTORY OF: |
| 2940771 | HV208784 | |

DATE RECOVERED
21-MAR-2012

UNIT 008

INVENTORY NO
12568468

**DESCRIPTION OF PROPERTY**

| ITEM ID | QUANTITY | DESCRIPTION OF PROPERTY |
|---|---|---|
| 5474039 | 1 | FIREARM, H AND R YOUNG AMERICA, .22 CAL REVOLVER 2.5" BARREL NICKEL FINISH |
| 5474040 | 7 | BULLET / AMMO / AMA - LIVE .22 CALIBER ROUNDS |

Court Date 19-APR-2012
Court Branch: 48-4

**EVIDENCE & RECOVERED PROPERTY SECTION USE ONLY**

CURRENCY

$ DEPOSITED AMT          $ INVENTORY AMT

**IUCR** 143A    WEAPONS VIOLATION UNLAWFUL POSS OF HANDGUN

**STATE CHARGES** 720 ILCS 5.0/24-1.1-A

CHARGE TYPE: FELONY
INCHOATE: OFFENSE AS CITED

RECOVERED/SEIZED FROM - NAME   WHITE, SAMUEL

OWNER'S NAME   WHITE, SAMUEL
ADDRESS   6527 S CALIFORNIA AVE
CHICAGO, IL 60629

AT 6527 S CALIFORNIA AVE
CHICAGO, IL 60629

BEAT OF RECOVERY 831

☐ DECEASED   ☐ ARRESTED

FOUND BY - NAME   MCDEVITT, BRIAN   Star# 13197
ADDRESS

TELEPHONE NO.

☒ CHECK IF C.P.D.

☒ HOLD FOR INVESTIGATION
AND/OR EVIDENCE
(IF NOT NEEDED FOR INVESTIGATION/EVIDENCE, LEAVE BLANK)

INVESTIGATING OFFICER -
MCDEVITT, BRIAN      STAR NO. 13197   UNIT 008

TELEPHONE NO.

☐ PROPERTY AVAILABLE FOR RETURN TO
OWNER

SEE COPY 4 FOR NOTICE TO FINDER

SIGNATURE
Electronic Approval

1st OFFICER'S NAME
MCDEVITT, BRIAN

STAR NO. 13197   UNIT 008

FINAL DESTINATION OF PROPERTY:
FORENSIC SERVICES SECTION
☐ TO BE DISPOSED OF BY CUSTODIAN (NOT TO BE RETURNED)
(THIS APPLIES IF PROPERTY IS NOT EVIDENCE, NOT RETURNABLE AND/OR OWNER IS UNKNOWN)

SIGNATURE
Electronic Approval

2nd OFFICER'S NAME
CAREY, THOMAS

STAR NO. 18795   UNIT 008

VIA   ☒ POLICE MAIL   ☐ RECOVERING UNIT PERSONNEL
☐ E & RPS PICKUP   ☐ EVID/LAB TECHNICIAN

SIGNATURE
Electronic Approval

APPROVING DESK SERGEANT
WALANO, MICHAEL

STAR NO. 13082   TIME 00:26

DATE 22-MAR-2012

Created by: PC0Y241

COMMENTS

MY SIGNATURE HEREON ACKNOWLEDGES
RECEIVING ALL PROPERTY DESCRIBED
IN THIS INVENTORY

☒ RECIPIENT'S SIGNATURE

ADDRESS - STREET            CITY            STATE            ZIP

☒ OFFICER'S SIGNATURE -   STAR - UNIT

☒ WATCH COMDR.'S APPROVAL SIGNATURE
(EXEMPT RANK REQUIRED FOR FIREARMS)

DATE RECEIVED

JUDGE            ☒ OFFICER'S SIGNATURE - STAR   UNIT

COURT ORDER - DISPOSAL INSTRUCTIONS

E. & R.P.S USE ONLY

COPY 1 - KEEP WITH PROPERTY

K55010

30r6

(61)

HISTORY:

The Reporting Officers on today's date, were assigned to a "Directed Patrol Mission", in the 63rd street corridor when they responded to a call of "shots fired" at 6535 S. California. Upon arrival the Officers observed the arrestee and another male in front of 6527 S. California. The Officers exited and approached the subjects in the courtway (front yard) of the apartment complex. As the Officers neared both subjects looked in the Officers direction and the arrestee was observed as he reached into his waist band, removed a small revolver and walked to the common hallway door of 6527 and opened the door and tossed the gun into the hallway. The subject was stopped at the door and the above listed revolver he threw was recovered. The subject was placed under arrest and advised of his rights. The Officer conducted a custodial search and the above listed contraband was recovered from the arrestee's pocket. The subject was advised of the additional charges against him. After being advised of his rights the arrestee stated "the gun was his and his homey (friend) didn't know he had the gun or X"(street term for ecstasy). The subject then stated I heard the shots, but check it out mine ain't been fired." The second subject was released after being found free of any contraband. The subject was transported to 008 where a check with the BofI showed he was convicted under 94CR1414003 for Murder. The Officers contacted Felony Review and the above charges were placed.

Report of:

B. MCDEVITT #13197

E.J. MAY #16474

Approved:

Sgt L. GAde #1841          22 MAR 12    0100 hours

HV 208 784

EXHIBIT C-I

Case: 1:15-cv-10622 Document #: 1 Filed: 11/24/15 Page 24 of 95 PageID #:24

Possession-handgun

NO. 6.5.2.7.

STREET: S California

TYPE OF LOCATION ON PREMISE WHERE OFFENSE OCCURRED: Street

B. MCDEVITT

Reporting Officers

Concerned Citizen

PARENT/GUARDIAN, IF JUVENILE

All information, descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

WHITE, Samuel, R.

6527 S. California

3420 N. 63rd Street

M-12 129

M-1 34 511 190 brn blk med Tat BD

5. RACE-AGE CODE

Had gun on street.

(1) WHITE, Samuel, R. M/B, 11 OCT 77. TR#1091608. CB#1836-8311 for "Felony UUW."

is a "Directed Patrol Mission/CAPS" arrest by MB's 806D and 865C

Black t-shirt, pants and shoes.

6527 S. California

MAR 12

DATE INVEST. COMPLETED—TIME: 22 MAR 12 0100

UNIT NOTIFIED: A/Cent

By Report

2235 hours

By Report

Det Div Admin

MCDEVITT, B.    STAR NO 13197

OFFICER'S SIGNATURE: By Report

E. J. MAY    STAR NO 16474

OFFICER NOTIFYING: By Report

SUPERVISOR APPROVING (PRINT NAME): Sgt./Lt. ... Gede

STAR NO 1841

DATE APPROVED: 22 MAR 12 0100

1836-8311-24

HV 202 784

806D

Policeman

21    MAR 12    MAR 12 2230    MAR 12 2235

DATE: BR 48-4    19 APR 12    1300 hours

INVENTORY:

   (1) 22 caliber, n/p H&R revolver, serial number removed, w/7 live 22 caliber

     rounds (recovered by McDEVITT);

   (1) Plastic bag containing (12) plastic packets, each containing crushed plant, cannabi

   and (1) plastic bag containing (6) multi-colored pills (Ecstasy). (recovered

   by McDEVITT).

GUN REGISTRATION: None, serial number removed.

WEATHER: 70 Degree's, Wednesday, clear with artificial lighting, in civilian dress.

ARRESTING: MB 806D B. MCDEVITT #13197 E.J. MAY #16474 T. CAREY #18795

     MB 865C K. RICHARDT #19385 E. FLAGG #12037

     MB 832 OTERO #10058 LOPEZ #6711

SEE PAGE #3

#1841    22 MAR 12

K55010  7-16

CHARGES: 720 5/24.1 & 720 570/402 & 720 550/4

CT DATE: BR 48-4    19 APR 12    1300 hours    HV 20& 784

INVENTORY: (1) 22 caliber, n/p H&R(?) revolver, serial number removed, w/7 live 22 caliber

rounds (recovered by McDEVITT);

(1) plastic bag containing (12) plastic packets, each containing crushed plant, cannabis

and (1) plastic bag containing (6) multi-colored pills (Ecstasy). (recovered

by McDEVITT).

GUN REGISTRATION: None, serial number removed.

WEATHER: 70 Degree's, Wednesday, clear with artificial lighting, in civilian dress.

ARRESTING: MB 806D B. MCDEVITT #13197    E.J. MAY #16474    T. CAREY #18795

MBE 865C K. RICHARDT #19385    E. FLAGG #12037

SEE PAGE #3

MB 832 OTERO #10058

LOPEZ #6711    #1841    22 MAR 12

CHICAGO POLICE

PERSONNEL

4. ADDRESS OF OCCURRENCE
6, 5, 2, 7, S California Street

9. TYPE OF LOCATION OR PREMISE WHERE OFFENSE OCCURRED (GIVE NAME OR LOCATION IF APPLICABLE)
Street

Weapons Violation

Unlawful Possession-handgun

10. LOCATION CODE

HY 203  784

| | 21. NAME (LAST-FIRST-M.I.) | IDENTITY VERIFIED | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) |
|---|---|---|---|
| B. | MCDEVITT | | |

A. Reporting Officers / Concerned Citizen

PARENT/GUARDIAN, IF JUVENILE

| 31. ☐ DISCOVERED ☐ WITNESSED ☑ REPORTED OFFENSE | 32. |
|---|---|
| WHITE, Samuel, R. | 6527 S. California |

41. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.)
3420 W. 63rd Street

42. HOME ADDRESS
6527 S. California

| 43. SEX | 3A. RACE | AGE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. | MARKS, SCARS, ETC. |
|---|---|---|---|---|---|---|---|---|
| M | 1 | 34 | 511 | 190 | brn | blk | med | Tat Rb |

71. DESCRIBE PROPERTY IN NARRATIVE

Had gun on street.

NARRATIVE

This is a "Directed Patrol Mission/CAPS" arrest by MB's 806D and 865C for "Felony UUW."

ARRESTEE:
(1) WHITE, Samuel, R. M/B, 11 OCT 77. IR#1081608. CB#1836-8311.

Black t-shirt, pants and shoes.

DATE ARRESTED:
21   MAR 12

OFFICER NOTIFYING FOLLOWUP INVESTIG. UNIT
By Report
By Cont.

| DATE INVEST. COMPLETED-TIME | | |
|---|---|---|
| 22 MAR 12 0100 | 2235 hours | |

PERSON NOTIFIED
By Report

97. SUPERVISOR APPROVING (PRINT NAME)
Sgt. E. Gage

DATE APPROVED - TIME
22 MAR 12 0100

McDEVITT
13197
16474

DEPUTY Div Admin
By Report

P.O. MAY

JPC-11.380 (Rev. 8/95)

Exhibit C (C1)

5 of 6

| Count | Class | Type | Statute | Arrest Charge Description | Inchoate |
|---|---|---|---|---|---|
| [1] | 4 | F | 720 ILCS 570.0/402-C | Pcs - Possession - Poss Amt Con Sub Except (A)(D) | OFFENSE AS CITED |
| [1] | A | M | 720 ILCS 550.0/4-C | Cannabis - Possess 10-30 Grms | OFFENSE AS CITED |
| [1] | 3 | F | 720 ILCS 5.0/24-1.1-A | Uuw - Weapon - Felon, Possess/Use Firearm | OFFENSE AS CITED |

**COURT CHARGES/DISPOSITION**

Statute
720-5/24-1.1-A

Charge
UUW - WEAPON - FELON, P

Class **M**  Case# **12111051601**

Disposition: NOLLE PROSEQUI
Sentence:

Disposition Date: 01-MAY-2012
Sentence Date:

**COURT CHARGES/DISPOSITION**

Statute
720-5/24-1.6(a)(1)

Charge
AGG UNLWFL USE WEAPON/VEH/2ND

Class **F**  Case# **12CR0945901**

Disposition: NOLLE PROSEQUI
Sentence:

Disposition Date: 19-NOV-2012
Sentence Date:

Disposition: NOLLE PROSEQUI
Sentence:

Disposition Date: 19-NOV-2012
Sentence Date:

**COURT CHARGES/DISPOSITION**

Statute
720-550/4-C

Charge
CANNABIS - POSSESS 10-30

Class **M**  Case# **12111051601**

Disposition: NOLLE PROSEQUI
Sentence:

Disposition Date: 01-MAY-2012
Sentence Date:

**COURT CHARGES/DISPOSITION**

Statute
720-570/402-C

Charge
PCS - POSSESSION - POSS A

Class **M**  Case# **12111051601**

Disposition: NOLLE PROSEQUI
Sentence:

Disposition Date: 01-MAY-2012
Sentence Date:

---

**ARREST**

Arrest Name: WHITE, SAMUEL ROBERT
Date of Birth: 11-OCT-1977
DCN or CB: 018180785
Officer: MOYA

Arrest Date: 05-JUL-2011  Holding Facility: CPD - DISTRICT 008
Arrest Address: 6527 S CALIFORNIA AVE CHICAGO, IL 60629
Residence: 6527 S CALIFORNIA AVE # G CHICAGO, IL 60629
Officer Badge#: 17172  Arresting Agency: CPD

| Count | Class | Type | Statute | Arrest Charge Description | Inchoate |
|---|---|---|---|---|---|
| [1] | L | | 10-8-515 | Soliciting Unlawful Business | OFFENSE AS CITED |
| [1] | L | | 10-8-520 | Street Vendor | OFFENSE AS CITED |
| [1] | L | | 4-8-020-C | Licensing Requirements/Mobile Food Dispenser | OFFENSE AS CITED |

---

**ARREST**

Arrest Name: WHITE, SAMUEL R
Date of Birth: 11-OCT-1977
DCN or CB: 018018770
Officer: FRONCZAK

Arrest Date: 14-NOV-2010  Holding Facility: CPD - DISTRICT 003
Arrest Address: 7050 S SOUTH CHICAGO AVE CHICAGO, IL 60637
Residence: 6527 S CALIFORNIA AVE CHICAGO, IL 60629
Officer Badge#: 16924  Arresting Agency: CPD



1 OF 10

```
CASE: 12111051601 S  (START OF CASE      )        PAGE: 004 OF  004      PROD
  DEFENDANT NAME: SAMUEL      R WHITE              LST APPEAL:
050112-
DEF DEMAND FOR TRIAL
RYAN JIM
BRANCH 48        RM 2               0100 PM


050112-
NOLLE PROSEQUI                                CALL
RYAN JIM
BRANCH 48        RM 2          0100 PM

END OF FILE



ENTER=CONT PF3=RETN PF7=BKW PF8=FRW PF9-APPL PF10=RESET PF12=PRINT CLEAR=EXIT
=> PRINT THE FOLLOWING PAGES PAGE: 001 THRU 004 DESTINATION ____
```

( Exhibit E )

# COOK COUNTY SHERIFF'S OFFICE
## Booking History Print Screen

User ID: . RHONDA CANTRELL

Date: 02/05/2013
Time: 8:50 AM
Page: 1 of 1

Name  WHITE, SAMUEL

Inmate #: 0564045    Birth Date: 10/11/1977    Birth State: IL    Race: BK Gender: M

| Booking # | Name | Book Date | Released | Release Reason | Docket #: |
|---|---|---|---|---|---|
| 20120605048 | WHITE, SAMUEL | 06/05/2012 | | | 12CR0945901 |
| 20120322110 | WHITE, SAMUEL | 03/22/2012 | 05/01/2012 | CHARGE DROPPED | 12111051601 |
| 20091112100 | WHITE, SAMUEL | 11/12/2009 | 02/27/2010 | SENTENCE EXPIRED | 09CR2213001 35606285 |
| 20090042543 | WHITE, SAMUEL | 06/29/2009 | 09/03/2009 | SOL | M09438720 M35606283 |
| 20090028815 | WHITE, SAMUEL | 05/05/2009 | 05/11/2009 | IDOC | M09438720 WIDOC |
| 20080038505 | WHITE, SAMUEL | 06/01/2008 | 06/03/2008 | IDOC | M08121408701 WIDOC/K55010 |



(Exhibit F)

30=10

Inmate #: 0564045     WHITE, SAMUEL          Birth Date: 10/11/1977     Birth State: IL

| Booking # | Name | Date | Released | Release Reason |
|-----------|------|------|----------|----------------|
| 20120605048 | WHITE, SAMUEL | 06/05/2012 | | |
| 20120322110 | WHITE, SAMUEL | 03/22/2012 | 05/01/2012 | Charge Dropped |
| 20091112100 | WHITE, SAMUEL | 11/12/2009 | 02/27/2010 | Sentence Expired |
| 20090042543 | WHITE, SAMUEL | 06/29/2009 | 09/03/2009 | SOL |
| 20090028815 | WHITE, SAMUEL | 05/05/2009 | 05/11/2009 | IDOC |
| 20080038505 | WHITE, SAMUEL | 06/01/2008 | 06/03/2008 | IDOC |

(Exhibit G)

Race: BK    Gender: M    Print    Exit

Docket #:

TZCR094590

```
 1      IN RE:    PEOPLE VS. SAMUEL WHITE

 2                     GJ NO. MAY 190

 3                     12 CR 9459

 4                     ARR. DATE June 5, 2012

 5

 6            BEFORE THE GRAND JURY OF COOK COUNTY

 7                      MAY 2012

 8

 9               REPORT OF GRAND JURY PROCEEDINGS on

10      May 15th, 2012, at the Cook County Criminal Courts

11      building, 2600 South California Avenue, Chicago,

12      Illinois 60608.

13

14            PRESENT:

15                    HONORABLE ANITA ALVAREZ,
                      State Attorney of Cook County,
16                    Illinois, by:
                      MS. JENNIFER HAMELLY,
17                    Appeared on behalf of the People
                      of the State of Illinois
18      WITNESS:

19      OFFICER McDEVITT

20

21

22      REPORTED BY:
        Dorothy M. Nagle
23      2650 South California Avenue
        Chicago, Illinois 60608
24      CSR License No. 0084-003564
```

(Exhibit H)

                                    1

1    MS. HAMELLY:  Good morning.

2         The Grand Jury does have the right to

3    subpoena and question any person against whom the

4    State's Attorney is seeking a Bill of Indictment, or

5    any other person, and to obtain and examine any

6    documents or transcripts relevant to the matter

7    being prosecuted by the State's Attorney.

8         THE FOREPERSON:  Would you raise your right

9    hand?

10                  (Witness sworn.)

11        MS. HAMELLY:  This is Grand Jury No. May

12   190.  The People of the State of Illinois are

13   seeking a true bill of indictment against Samuel

14   White for the following offenses of unlawful use of

15   a weapon by a felon, armed violence, aggravated

16   unlawful use of a weapon, possession of a controlled

17   substance and armed habitual criminal.

18

19

20

21

22

23

24

2

OFFICER McDEVITT,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MS. HAMELLY:

Q.   Officer, would please state your name and spell your last name for the record.

A.   Officer McDevitt, M-c-D-e-v-i-t-t, Star No. 13197, assigned to the 8th District, Chicago Police Department.

Q.   Were you so working for the Chicago Police Department on or about March 21, 2012 in the evening in the area of the 6500 block of South California, Chicago, Cook County, Illinois?

A.   Yes, I was.

Q.   At that time were you dispatched to that area?

A.   Yes, I was.

Q.   What was the purpose of that dispatch?

A.   I was investigating a call of shots fired.

Q.   And at that time, did you arrive in the apartment complex?

A.   Yes.

1      Q.  Did you see anyone in the courtyard of that

2  apartment complex?

3      A.  Yes, I did.

4      Q.  Did you later learn that that person is

5  Samuel White?

6      A.  Yes.

7      Q.  And the apartment complex courtyard where

8  you saw him standing, was that lit?

9      A.  Yes, it was.

10     Q.  Was it lit with overhead light?

11     A.  Yes, I believe so.

12     Q.  And at that time did you approach towards

13  him for a field interview?

14     A.  Yes, I did.

15     Q.  As you approached Samuel White, what, if

16  anything, did you observe him do?

17     A.  I observed White as he looked in my

18  direction went to his waistband and removed a

19  handgun.

20     Q.  And did you continue to watch him and

21  approach him?

22     A.  Yes, I did.

23     Q.  What did you observe him do next, if

24  anything?

1      A.  I observed him walk toward a door and open

2  the door and toss the handgun in the door.

3      Q.  Did you detain Samuel White at that time?

4      A.  Yes.

5      Q.  Did you then recover anything from behind

6  that door where you saw him toss a handgun?

7      A.  Yes.

8      Q.  What, if anything, did you recover?

9      A.  One .22-caliber revolver loaded with seven

10  live .22-caliber rounds.

11      Q.  At that time it was uncased?

12      A.  Yes, it was.

13      Q.  And you had previously seen it in Samuel

14  White's hands?

15      A.  Yes.

16      Q.  Did you recover anything from Samuel

17  White's person after that?

18      A.  Yes, I did.

19      Q.  What did you recover from Samuel White's

20  person?

21      A.  One clear plastic baggie containing 12

22  knotted baggies of suspect cannabis, as well as one

23  baggie containing six pills, suspect Ectasy.

24      Q.  Were those items inventoried and sent to

1    the Illinois State Police Crime Lab for testing and
2    analysis?

3        A.  Yes, they were.

4        Q.  Now going back to the revolver that you are
5    recovered.  What, if anything, did you notice about
6    that revolver?

7        A.  The serial number was scratched off, I
8    believe.  It was unlegible.

9        Q.  So you couldn't read what the serial number
10   was?

11       A.  No.

12       Q.  Did you transport Samuel White to the
13   station for processing?

14       A.  Yes.

15       Q.  Did you learn that Samuel White -- whether
16   Samuel White has a valid firearm owner's
17   identification card?

18       A.  Yes, he did not have a FOID card.

19       Q.  Did you also learn that he has prior
20   convictions for domestic battery in case
21   No. 09 CR 22130 and a prior conviction for murder in
22   case No. 94 CR 14140?

23       A.  Yes.

24       Q.  And as to those items that were inventoried

6

1    and sent to the lab that were recovered from his

2    person, did you learn that the 12 items did test

3    positive for a misdemeanor amount of cannabis 3.8

4    grams?

5        A.   Yes.

6        Q.   And did you learn that as to those six

7    tablets, three of them were analyzed and three were

8    not?

9        A.   Yes.

10       Q.   And did you learn that one of those tablets

11   was analyzed and tested positive for a Schedule One

12   substance, and I will try to say it and then spell

13   it, 5-methoxy-N,N-diisopropyl tryptamine,

14   5-m-e-t-h-o-x-y-N,-N-

15   d-i-s-o-p-r-o-p-y-l-t-r-y-p-t-a-m-i-n-e, which is

16   a substance that is not authorized under Illinois

17   Controlled Substance Act?

18       A.   Yes.

19       Q.   Did you also learn that the other two

20   tablets that were analyzed tested positive for .5

21   grams of BZP, which is Benzylpiperazine,

22   B-e-n-z-y-l-p-i-p-e-r-a-z-i-n-e, which is also a

23   Schedule One substance which is not authorized under

24   the Controlled Substance Act?



# OFFICE OF THE STATE'S ATTORNEY
## COOK COUNTY, ILLINOIS

**ANITA ALVAREZ**
State's Attorney

Criminal Prosecutions Bureau
2650 S. California Ave.
Chicago, IL 60608

Samuel White
6527 S. California Ave. #1
Chicago, IL 60629

Samuel White:                                    RE:12CR-9459

Please be advised that on May 15, 2012 you were indicted by the Cook County Grand Jury, Indictment No. 12CR-9459, charged with ARMED HABITUAL CRIMINAL, etc. Your courtroom assignment has been set for Tuesday, June 5, 2012, at 9:00 AM. Before the Honorable Paul P Biebel,Jr, Court Room 101, First Municipal District, Circuit Court of Cook County, 2650 S. California, Chicago, IL 60608. Failure to appear in assigned courtroom may result in a warrant for your arrest.

Sincerely,

ANITA ALVAREZ
State's Attorney of Cook County

By:

John B Dillon
Assistant State's Attorney

STATE OF ILLINOIS        )
                         ) SS.
COUNTY OF COOK           )

Julie Ruiz, BEING FIRST DULY SWORN ON OATH DEPOSES AND STATES that she served a copy of the above letter, properly addressed and stamped to the above named by depositing same in the United States mail chute at 2650 S. California Ave., Chicago, IL, within five days of this indictment.

Subscribed and sworn (or affirmed) to before me May 16, 2012

by _____ Notary Public

Official Seal
My Commission Expires 08/26/2013

( Exhibit I )

3X



### ILLINOIS STATE POLICE
*Freedom of Information Office*

Pat Quinn
**Governor**

Hiram Grau
**Director**

### RESPONSE to FOIA REQUEST

April 15, 2014

Samuel White #K55010
Pinckneyville CC
P.O. Box 999
Pickneyville, Illinois 62274

FOIR #14-0674

Thank you for writing to the Illinois State Police with your request for information pursuant to the Illinois Freedom of Information Act, 5 ILCS 140/1 et seq.

On April 9, 2014, we received your request for the following: Information pertaining to Inventory #12568468.

The Illinois State Police has no documents responsive to your request. The Chicago Police Department did not submit the item of evidence, Inventory #12568468, to the ISP Forensic Science Center at Chicago for analysis.

Respectfully,

Lieutenant Steve Lyddon
FOIA Officer
801 South 7th Street, Suite 1000-S
Springfield, Illinois 62703

Exhibit J

3k



## ILLINOIS STATE POLICE
*Freedom of Information Office*

Pat Quinn
**Governor**

Hiram Grau
**Director**

## RESPONSE to FOIA REQUEST

May 5, 2014

Samuel White #K55010
Pinckneyville CC
P.O. Box 999
Pickneyville, Illinois 62274

FOIR #14-0808

Thank you for writing to the Illinois State Police with your request for information pursuant to the Illinois Freedom of Information Act, 5 ILCS 140/1 et seq.

On April 28, 2014, we received your request for certain records pertaining to:  Information pertaining to RD #HV208784, Inv. #12568468.  The Illinois State Police can locate no documents responsive to your request.

Sincerely,

Lieutenant Steve Lyddon
FOIA Officer
801 South 7th Street, Suite 1000-S
Springfield, Illinois  62703

EXhibiT K

1   P-a-t-t-a-r-o-z-z-i.

2          THE COURT:  For the defense?

3          MR. SHERMAN:  Dennis Sherman.

4          THE COURT:  Any other matters or motions we

5   need to address?

6          MR. ANDERSON:  Motion to exclude.

7          MR. SHERMAN:  We will join.

8          THE COURT:  That is granted.

9              Any opening statements?

10         MR. ANDERSON:  I will waive opening, your

11  Honor.

12         MR. SHERMAN:  So will I.

13         THE COURT:  Call your first witness.

14         MR. ANDERSON:  Thank you, your Honor.

15              (Witness duly sworn.)

16         THE COURT:  You may proceed.

17         MR. ANDERSON:  Thank you, your Honor.

18              OFFICER BRIAN MCDEVITT,

19  a witness called herein, having been first duly

20  sworn, was examined and testified as follows:

21              DIRECT EXAMINATION

22                   BY

23              MR. ANDERSON:

24    Q.  In a loud, clear voice, if you could state

1    your first and last name.

2         A.   Officer Brian McDevitt, M-c-D-e-v-i-t-t.

3         Q.   Sir, who are you employed by?

4         A.   The Chicago Police Department.

5         Q.   How long have you been a Chicago police

6    officer?

7         A.   Seven years.

8         Q.   What is your star number, sir?

9         A.   13197.

10        Q.   I am going to draw your attention to the

11   date of March 21, 2012. Were you so employed and on

12   duty as a Chicago police officer at approximately the

13   10:00 night hour of that day?

14        A.   Yes.

15        Q.   Were you working alone or with partners?

16        A.   I was working with two additional partners.

17        Q.   Do you recall their names, and if you could

18   spell their names?

19        A.   Yes. Officer May, M-a-y, and Officer Carey,

20   C-a-r-e-y.

21        Q.   Were you on foot or in a vehicle?

22        A.   I was in a vehicle.

23        Q.   And if you could describe that vehicle to

24   the Court. What type of vehicle was it?

1    A.   The vehicle was an unmarked Ford Crown

2  Victoria.

3    Q.   Did that have emergency equipment that is

4  usually on a police vehicle?

5    A.   Yes, it did.

6    Q.   Could you describe your clothing that you

7  were wearing at the time to the Court.

8    A.   I was in civilian dress, blue jeans and a

9  T-shirt I believe covered by a ballistic vest.

10   Q.   Did that vest have the insignia apparent to

11 the public that you were a Chicago police officer?

12   A.   Yes, it did.

13   Q.   Did you also have a duty belt on with a

14 firearm and other tools of your trade?

15   A.   Yes, I did.

16   Q.   Was that also visible to the public?

17   A.   Yes.

18   Q.   Were your partners similarly dressed?

19   A.   Yes.

20   Q.   When you were in your vehicle, do you recall

21 the seating arrangement in your vehicle when you were

22 travelling inside your vehicle?

23   A.   Yes.

24   Q.   If you could describe to the Court your

1   partners and yourself, the seating arraignment inside

2   the car.

3       A.   Officer May was in the driver's seat.  I was

4   in the front passenger's seat.  Officer Carey was in

5   the rear passenger's seat.

6       Q.   Now I am going to draw your attention to an

7   area known as the 6500 block of South California

8   Avenue.  Is that located within the City of Chicago,

9   County of Cook?

10      A.   Yes, it is.

11      Q.   Are you aware of the 6500 block of South

12  California Avenue?

13      A.   Yes, I am.

14      Q.   How are you familiar with that area?

15      A.   Those blocks fall within the boundaries of

16  my district that I work in currently.

17      Q.   What district is that?

18      A.   The 8th District.

19      Q.   Which direction does traffic lay at 6500

20  South California?

21      A.   The traffic goes northbound and southbound.

22      Q.   Now, that area, would you describe that as a

23  residential, business, or is that a combination of

24  both?

1     A.   It is a residential area.

2     Q.   What type of homes or buildings are on that

3 6500 block of South California?

4     A.   There is some homes on the west side of the

5 street, and there is mostly apartment complexes on

6 the east side of the street.

7     Q.   Now I am going to draw your attention to

8 just before 22:35 or slightly before 10:35 in the

9 evening.  Were you near the 6500 block of South

10 California in your police vehicle?

11     A.   Yes, I was.

12     Q.   Approximately how far away were you from

13 that 6500 block?

14     A.   Approximately within a mile.

15     Q.   You were on patrol; is that correct?

16     A.   Correct.

17     Q.   Can you briefly describe to the Court what

18 type of patrol you were working, general patrol you

19 were working at that time.

20     A.   I was assigned to a directed patrol mission

21 within the 63rd Street corridors due to recent gang

22 and drug activity.

23     Q.   Can you briefly describe what type of

24 corridor as you say or what type of neighborhood is

1  in that 6500 block of South California. Is that

2  known for anything?

3      A.   Yes.  It is an area that is known to be a

4  high narcotic area.

5      Q.   Now, at slightly before 22:35, did you

6  happen to receive any information while you were in

7  your car?

8      A.   Yes.

9      Q.   Could you briefly describe to the Court what

10 that was.

11     A.   Yes.  A call of shots fired came out over

12 the radio.

13     Q.   Was there an area which that call pointed

14 you to?

15     A.   Yes.

16     Q.   What was that?

17     A.   6535 South California.

18     Q.   What did you do after -- what occurred after

19 you received the radio transmission?

20     A.   Myself as well as my partners relocated to

21 the area of the 6500 block of South California.

22     Q.   Approximately how long did it take you to

23 arrive there upon receiving -- after receiving the

24 radio call?

1     A.    Within minutes.

2     Q.    From which direction did you travel to that

3  6500 block of South California?

4     A.    We travelled west and then northbound.

5     Q.    So you were travelling northbound on

6  California?

7     A.    Correct.

8     Q.    As you were travelling northbound on

9  California Avenue, did you -- where did you initially

10  travel to on that block?

11     A.    6535 South California.

12     Q.    Which side of the street is that on?

13     A.    It is on the east side of the street.

14     Q.    Approximately how fast was your motor

15  vehicle going when you approached that address?

16     A.    Ten to 15 miles per hour.

17     Q.    Did you happen to see -- and if you could

18  describe what that building is at 6535.

19     A.    It is a large apartment complex.

20     Q.    Would that be considered a courtyard type

21  building?

22     A.    Correct.

23     Q.    Did you happen to see any individuals at the

24  6535 courtyard building?

*(handwritten margin note: why He did not go into the building)*

1   A.   No.

2   Q.   What occurred next?

3   A.   We continued to drive northbound on South

4   California.

5   Q.   And what happened next?

6   A.   I observed two individuals standing in the

7   courtyard at 6527 South California.

8   Q.   Would that be just one courtyard further

9   north?

10   A.   Correct.

11   Q.   How many individuals did you see in the 6525

12   corridor building?

13   A.   Two.

14   Q.   If you could look around the courtroom

15   today, and if you see one of the individuals that was

16   in that courtyard building, could you point to that

17   person and describe an article of clothing they are

18   wearing now.

19   A.   Yes.  The defendant wearing the tan DOC

20   outfit.

21       MR. ANDERSON:  May the Court accept this as an

22   in-court identification of the defendant.

23       THE COURT:  In-court identification of the

24   defendant.

1    BY MR. ANDERSON:

2        Q.    Okay.  Can you briefly describe that

3    building.  How many floors was that courtyard

4    building, 6525?

5        A.    That building is three floors, I believe.

6        Q.    Is that a courtyard building as well?

7        A.    Yes, it is.

8        Q.    Is there a gate or anything that is on that

9    courtyard?

10       A.    Yes.

11       Q.    Can you describe what type of gate that is.

12       A.    Yes.  It is a wrought iron fence with large

13   gaps throughout the fence.

14       Q.    As you -- what occurred as you rolled up to

15   that 6527 and you saw those two individuals?

16             What happened next?

17       A.    We stopped our vehicle and exited.

18       Q.    Which door did you exit?

19       A.    I exited out of the passenger's side.

20       Q.    Where did you go?

21       A.    I walked quickly into the courtyard at 6527

22   South California towards the individuals.

23       Q.    Let me ask you:  You described a gate

24   there -- excuse me -- a fence there.  Was there a

Where is the probal cause 4th amend violation

G-17

1  gate there on the fence?

2  A.  Yes, there was a gate that swung open into

3  the courtyard.

4  Q.  What occurred as you were walking into the

5  courtyard?

6  A.  As I neared closer to the two individuals,

7  the defendant reached into his waistband, removed a

8  handgun, and began to walk towards the door at 6527

9  South California.

10  Q.  Now, where was the defendant -- if you could

11  briefly describe the layout of the courtyard,

12  approximately how wide it was and how many feet was

13  its depth.

14  A.  The courtyard is probably 50 feet in depth

15  and approximately 20 feet wide.

16  Q.  Where was the defendant standing or

17  positioned in relation to the courtyard?

18  A.  The defendant was in the southeast corner of

19  the courtyard.

20  Q.  As you were facing the defendant, was he to

21  your right or to your left?

22  A.  He was to my right.

23  Q.  And how many feet down was he from you when

24  you started to walk into the courtyard?

1    A.    Approximately 50 feet.

2    Q.    Can you please describe was there any

3    lighting at that area?

4    A.    Yes, there was.

5    Q.    Can you describe to the Court what type of

6    lighting was there.

7    A.    Yes.  There was street lamps with -- one

8    street lamp, but there is two lamps attached to the

9    one post that was just to the north of that location,

10   and there was one light elevated directly in the

11   middle of the building in the courtyard.

12   Q.    All right.  If you could describe to the

13   Court how -- what was the lighting like?

14         Could you see inside the courtyard?

15   A.    Yes, I was able to see inside the courtyard.

16   Q.    Okay.  Was anything obstructing your view of

17   yourself and the defendant?

18   A.    No.

19   Q.    Where was the other person standing in

20   relation to the defendant?

21   A.    The other individual was standing just next

22   to the defendant on his right side.

23   Q.    Was that individual blocking your view of

24   the defendant?

1   A.   No.

2   Q.   I am sorry.

3        What did you see the defendant do, if
4   anything?

5   A.   I saw the defendant reach into his
6   waistband, remove an item, and walk -- I am sorry --
7   a handgun and walk toward the door of that apartment
8   complex.

9   Q.   Which way was the defendant facing when he
10  did that?

11  A.   He was facing toward me.

12  Q.   What did you see him do in relation to the
13  door?

14  A.   He opened the door and threw the handgun
15  onto the floor.

16  Q.   What occurred after he threw the handgun?

17  A.   He then closed the door and walked back away
18  from the door a few steps.

19  Q.   How many feet was that door from him when
20  you first saw him reach into his waistband?

21  A    Approximately six feet.

22  Q.   What was the next thing that occurred after
23  you saw that?

24  A.   Myself as well as my partners continued to

1   walk to the defendant.  I reached the defendant

2   first.  Officer Carey came and secured the two

3   together with hand restraints.

4       Q.   What did you do next?

5       A.   I walked to the door of 6527 South

6   California, opened the door, went to the hall, and

7   picked up the handgun.

8       Q.   How far into the doorway into the hall or

9   the opening did you have to reach down to get the

10  handgun?

11      A.   Approximately three to four feet.

12      Q.   Was there any other items on the floor in

13  the general area?

14          MR. SHERMAN:  Object to leading.

15          THE COURT:  Overruled.

16          THE WITNESS:  No.

17  BY MR. ANDERSON:

18      Q    Okay.  Can you describe what that handgun

19  looked like.

20      A    Yes.  It was a silver metal, a .22 caliber,

21  I believe, revolver.

22      Q.   When you saw it on the floor before picking

23  it up, did it look like the item that you saw the

24  defendant slip out of his waistband?

1    A.   Yes.

2    Q.   What condition was the revolver in pursuant

3  to -- was it loaded or unloaded?

4    A.   It was loaded with seven rounds.

5    Q.   Do you recall what type of ammunition that

6  was?

7    A.   Yes, .22 caliber rounds.

8    Q.   Was that a .22 caliber revolver?

9    A.   Yes, it was.

10    Q.   What did you next do with the firearm?

11    A.   I secured the firearm.  Well, I unloaded the

12  firearm, and then I secured the firearm in my vest.

13    Q.   Vest pocket?

14    A.   Yes.

15    Q.   Was anything inside that vest pocket before

16  you put the ammunition and the handgun in there?

17    A.   No.

18    Q.   What was the next thing that occurred?

19    A.   I approached the defendant and performed a

20  custodial search.

21    Q.   Briefly describe how you conducted the

22  search and what, if anything, resulted in that

23  search.

24    A.   I patted down from head to toe and checked

1   pockets for any contraband.

2      Q.   Did your search reveal anything from the
3   defendant?

4      A.   Yes.

5      Q.   What was that?

6      A.   One clear plastic bag with 12 bags of
7   suspect Cannibis and six multicolored pills
8   containing suspect Ecstasy.

9      Q.   Were those pills in their own bag as well?

10     A.   Yes, they were.

11     Q.   Was that all in the one bag?

12     A.   Yes.

13     Q.   Did your search reveal anything else from
14  the defendant?

15     A.   No.

16     Q.   What occurred with the other individual?

17          Was he searched as well?

18     A.   Yes, he was.

19     Q.   Did that search reveal anything?

20     A.   No, it did not.

21     Q.   What occurred with him?

22          Was he released?

23     A.   He was free to go.

24     Q.   Now, what was the next thing that occurred

1  with the defendant?

2      A.    I then --

3      Q.    I am sorry, sir.  I apologize.

4            What did you do with the multicolored
5  pills and the Cannibis?

6            What did you do with that?

7      A.    I secured those items in my vest pocket.

8      Q.    Would that be the same pocket you put the
9  ammunition and the handgun in?

10     A.    Yes.

11     Q.    What was the next thing that occurred with
12 the defendant?

13     A.    I then escorted the defendant outside of the
14 courtyard to the transport vehicle.

15     Q.    What occurred then?

16     A.    I read the defendant his Miranda warnings at
17 that time.

18     Q.    How did you read the defendant the Miranda
19 warnings?

20     A.    Per my FOP book.

21     Q.    What, if anything, did the defendant say?

22     A.    Defendant said that the gun was his in his
23 home.  He didn't know that he had it on him or the X.

24     Q.    And what, if anything, else did the

The State
deleted this

G-24

1    defendant say?

2        A.    He also said that he heard the shots fired,

3    but he related to me to look at his gun, it hadn't

4    been fired.

5        Q.    Could you tell whether that gun was fired at

6    the time that you picked it up?

7        A.    No.

8        Q.    That it was not fired or --

9        A.    I couldn't tell one way or another.

10       Q.    Now, was the defendant then transported back

11   to the police station?

12       A.    Yes, he was.

13       Q.    Now I am going to draw your attention back

14   to -- which district is your police station?

15       A.    8th District.

16       Q.    Now I am going to draw your attention back

17   to the 8th District Police Department.  When you got

18   back to the police station, did you still have the

19   firearm, the ammunition, as well as the suspect

20   Cannibis and controlled substances still in your vest

21   pocket?

22       A.    Yes.

23       Q.    Did you maintain care, custody, and control

24   of those items?

1    A.    Yes.

2    Q.    I am going to draw your attention to the

3  processing room in your police department.   Drawing

4  your attention to the .22 revolver and the seven live

5  rounds, what did you do in relation to the firearm

6  and the .22 caliber live rounds?

7    A.    Those items went into one large orange

8  envelope, and the ammunition goes inside of that

9  large envelope inside of a smaller envelope.

10   Q.    Did you register that in any way?

11         Did you follow an inventory process?

12   A.    Yes, I did.

13   Q.    Could you just briefly describe to the Court

14  what your inventory process was for the firearm and

15  the ammunition.

16   A.    Yes.  I input into the computer the

17  specifics of the whereabouts of the case as well as

18  the description of those items.   Those items are then

19  given a unique inventory number.

20   Q.    Was that number 12568468?

21   A.    Yes.

22   Q.    Please continue what you did next.

23   A.    I also inventoried the narcotics.   Those

24  items go into a clear plastic baggy.   A description



He +used the computer to place any items on Inventory of Valadez

(handwritten left margin, rotated)
If there number was placed in the computer why did the belong to Valdez or the computer

(handwritten left margin, lower)
These he say he found everything in bags

1  is written on those.  That description is input into

2  a computer as well.

3      Q.   Would that include the one clear plastic

4  baggy, the 12 smaller knotted bags containing the

5  green leafy substance, suspect Cannibis, and the one

6  bag containing the 60 multicolored pills, suspect

7  controlled substances?

8      A.   Yes.

9      Q.   Did you also follow the same inventory

10  procedures?

11     A.   Yes.

12     Q.   Was a unique inventory number assigned,

13  12568488?

14     A.   Yes.

15     Q.   Now, what occurred after you had placed

16  those in their individual larger bags?

17          What happened next?

18     A.   I then walked those items over to the desk

19  sergeant.

20     Q.   In relation to 12568488, the suspect

21  narcotics, what occurred with that bag?

22     A.   That bag is heat sealed.  I sign off on it

23  as well as the desk sergeant.  That bag is then

24  dropped into a narcotics safe.

1    Q.    That is a restricted area; is that correct?

2    A.    Correct.

3    Q.    To your knowledge, was Inventory Item

4  No. 12568488 sent to the Illinois State Police Crime

5  Lab?

6    A.    Yes.

7    Q.    In relation to the firearm and the bullets,

8  is that also enclosed within its separate bag?

9    A.    Yes.

10   Q.    That being Inventory No. 12568468, and that

11  resides in IRPS; is that correct?

12   A.    Correct.

13       MR. ANDERSON:  May I approach, your Honor.

14  BY MR. ANDERSON:

15   Q.    I am showing you what has been marked

16  People's Group Exhibit 1-A, 1-B, 1-C, and 1-D.  Sir,

17  if you could take what has been marked for

18  identification as 1-A, do you recognize what 1-A is?

19   A.    Yes, I do.

20   Q.    What do you recognized that to be?

21   A.    A panoramic shot of the east side of the

22  street of the 6500 block of South California.

23   Q.    Does that photograph truly and accurately

24  represent -- and what addresses are contained -- what

1    apartment buildings per address are contained within

2    that wider photograph?

3        A.   65 probably 27 South California and the

4    courtyard of 6535 South California.

5        Q.   Which compass direction would 6535 be on

6    that photograph?  Would that be further --

7        A.   Further south.

8        Q.   Now, that occurred in the evening; is that

9    correct?

10       A.   Yes.

11       Q.   This photograph occurs at daytime; is that

12   right?

13       A.   Yes, that is right.

14       Q.   Is the only difference time of day?

15       A.   Yes.

16       Q.   Does that photograph truly and accurately

17   depict that block as it looked on the night of

18   March -- at approximately 10:30 on the night of March

19   21, 2012?

20       A.   Yes.

21       Q.   I am showing you what has been marked as

22   People's No. 1-B.  Can you identify what 1-B is.

23       A.   Yes.

24       Q.   What is 1-B?

1       A.   It is the courtyard at 6527 South

2   California.

3       Q.   Did that courtyard truly and accurately

4   depict -- outside of it being daylight -- what that

5   courtyard looked on March 21, 2012 at 10:30?

6       A.   Yes.

7       Q.   I am going to show you what has been marked

8   as People's No. 1-C.  If you could describe what 1-C

9   is.

10      A.   That is the courtyard at 6527 South

11  California as well.

12      Q.   Is that more of a closer view of the

13  courtyard?

14      A.   Yes, it is.

15      Q.   I am going to show you --

16          THE COURT:  6525 you said?

17          THE WITNESS:  6527 South California.

18  BY MR. ANDERSON:

19      Q.   I am going to show you what has been marked

20  as 1-D.  What do you recognize 1-D to be?

21      A.   That is the door located at 6527 South

22  California.

23      Q.   Is this a door that you saw the defendant

24  open up?

1      A.    Yes.

2      Q.    Now, do all these photographs truly and

3  accurately represent the courtyard and the door as

4  they looked on the night in question, March 21st?

5      A.    Yes.

6      Q.    Now I would like to show you People's 1-A.

7  If you could put --

8          MR. ANDERSON:  And with the Court's permission,

9  I would like to hand the defendant a pen.

10         MR. SHERMAN:  He is not the defendant.

11         MR. PATTAROZZI:  The officer.

12         MR. ANDERSON:  I am sorry.  The witness the

13 pen.

14 BY MR. ANDERSON:

15     Q.    If you could put an arrow where 6535 is

16 portrayed in that photograph.

17     A.    Sure.   (Witness complied).

18     Q.    If you could put an arrow with two lines in

19 it where the 6525 courtyard is -- 6527.

20     A.    (Witness complied).

21         THE COURT:  He put an arrow where both

22 locations were.

23         MR. ANDERSON:  He put one arrow that has two

24 lines in it.

1  BY MR. ANDERSON:

2      Q.  If you could write above the arrow with the

3  two lines the address that that arrow points to.

4         THE COURT:  Is that also 1-A he is marking?

5         MR. ANDERSON:  Yes.

6         THE COURT:  Thank you.

7  BY MR. ANDERSON:

8      Q.  Above the arrow with one line, if you could

9  put the address that that courtyard contains.

10     A.  (Witness complied).

11     Q.  Now I am taking back 1-A.

12        If you could take that pen -- I am going

13 to hand you 1-B -- could you draw circles around

14 lighting, any lighting bulbs or lights that were

15 working on that day, darker circles there.

16     A.  (Witness complied).

17     Q.  If you could describe -- and where was the

18 first circle that you made on the photograph?

19     A.  It is in the wall of the center of the

20 courtyard.

21     Q.  Okay.  You made two other circles; is that

22 correct?

23     A.  Yes, that is correct.

24     Q.  What contains those other two circles?

1    A.   The street lamp with two -- it's got two

2  lights on one post.

3    Q.   Thank you.

4            Now I am showing you what has been

5  marked as -- well, still maintaining your attention

6  on -- excuse me.  Withdraw that.

7            Drawing your attention to 1-C, could you

8  write an X where you observed the defendant when he

9  was taking his revolver outside of his waistband.

10    A.   (Witness complied).

11    Q.   Make that a big dark X, if you could.

12    A.   (Witness complied).

13    Q.   If you could make a zero where the other

14  person was standing when the defendant did that.

15    A.   (Witness complied).

16    Q.   If you could make a triangle where you were

17  when you observed the defendant did that.

18    A.   (Witness complied).

19    Q.   Thank you.

20      MR. ANDERSON:  May the record reflect that the

21  defendant has marked 1-C in such a fashion.

22  BY MR. ANDERSON:

23    Q.   I am showing you what has been marked as --

24  first of all, if you can describe what that firearm

G-33

1    looked like when you saw it being taken from

2    defendant's waistband.

3         A.    I saw a small silver handgun with light

4    shining from the metal.

5         Q.    Thank you.

6               I am showing you what has been marked as

7    1-D.  If you could draw a circle around the door that

8    the defendant opened up.

9         A.    (Witness complied).

10        Q.    If you could draw an X where the defendant

11   was standing when he came back outside of the door

12   after he tossed the gun inside.

13        A.    (Witness complied).

14        Q.    Thank you.

15              How tall are the wrought iron fences

16   that are inside the courtyard at the address 6527?

17        A.    Approximately four feet.

18        Q.    I am going to take back the photographs.

19   Thank you very much.

20        MR. ANDERSON:  If I could just have one moment,

21   your Honor.

22   BY MR. ANDERSON:

23        Q.    Did you happen to see any other individuals

24   in the courtyard besides the defendant and that other

They STATED They NEVER Entered the Hallway

Is they People Exhibit they never produced The gun photo (sic)

1  person that was released?

2      A.   No.

3      Q.   Did you happen to see any other individuals

4  including any females, anything, on that block of

5  6500 South California?

6      A.   No.

7          MR. ANDERSON:   Tender the witness, your Honor.

8                    CROSS-EXAMINATION

9                          BY

10                     MR. SHERMAN:

11     Q.   Was not the call of gunshots fired in the

12 alley?

13     A.   Not to my knowledge.

14     Q.   Not to your knowledge.

15          The State didn't show you the 911 tapes

16 and the inquiry today before you testified?

17     A.   I didn't look at the sheets.

18     Q.   Well, would it surprise you if, in fact, the

19 call was shots fired in the alley?

20     A.   No, because several people called shots

21 fired.

22     Q.   Okay.  But you never went into that alley,

23 correct?

24     A.   Correct.

1      Q.   Didn't even drive down it to see if there
2  was anybody in the alley; you went directly to the
3  front of these buildings?

4      A.   Yes.

5      Q.   In these buildings there are like no
6  gangways that you can go from California into the
7  east alley, are there?

8      A.   I'm not sure.

9      Q.   Now, when you saw these two people -- by the
10 way, what was the name of the other person inside
11 that courtyard?

12     A.   I don't remember.

13     Q.   All right.  Can I show you a police report.
14 Would that refresh your memory?

15     A.   No.

16     Q.   Why wouldn't that refresh your memory,
17 Officer?

18     A.   Because only one person was arrested.

19     Q.   That other person was a witness; he was
20 right there when this case occurred, correct?

21     A.   Yes.

22     Q.   Why wouldn't you take his name and address
23 down?

24     A.   His name and address was taken down on a

1    contact card.

2        Q.    I see.    But not put in any police reports?

3        A.    No.

4        Q.    You did run a check on this man's name and

5    address to see if there were any warrants out for

6    him, didn't you?

7        A.    I didn't personally.

8        Q.    Did one of your partners do it while they

9    were -- the two men were in custody or detained?

10       A.    I don't know.

11       Q.    You don't know.    Okay.

12              Now, how far away from the defendant

13   were you when you say you saw him draw out this

14   handgun?

15       A.    Approximately 35 feet.

16       Q.    35 feet.    Approximately from where I am to

17   you?

18       A.    Yes.

19       Q.    Okay.    What did you do when you saw this man

20   draw out a handgun?

21       A.    I had my handgun drawn, and I continued

22   toward the individual.

23       Q.    You didn't make any outcries to alert your

24   partner that you had seen a handgun?

1          You didn't shout gun, gun?

2     A.    No.

3     Q.    You drew your handgun.  Did you put that in

4  your police report, Officer, that when you saw the

5  gun, that you drew out your weapon?

6     A.    No.

7     Q.    You say the defendant then went to that

8  doorway.  When he was going to the doorway, his back

9  was to you, wasn't he?

10    A.    When he was going to the doorway, his side

11  was toward me.

12    Q.    I see.  This is not the doorway that is all

13  the way in the back of this building?

14    A.    I don't understand.

15    Q.    Is the doorway -- does the doorway face

16  west?

17    A.    No.

18    Q.    It faces what, south or north?

19    A.    South.

20    Q.    Okay.  When he went inside to open that

21  doorway, did he go inside the hallway?

22    A.    No.

23    Q.    I see.  The doorway, does it open towards

24  you -- towards the courtyard or does it open inside

1  the vestibule?

2  A.  It opens inside.

3  Q.  So you were not in any way blocked by that

4  hallway to see where, in fact, this object went?

5  A.  I don't understand.

6  Q.  Well, you are walking up.  You were 35 feet

7  away.  The man walks into this courtyard -- into this

8  doorway that opens in.  Wasn't there anything like

9  the building blocking your view of what was happening

10  inside?

11  MR. ANDERSON:  Objection, compound, your Honor.

12  THE COURT:  Overruled.

13  THE WITNESS:  I couldn't see fully inside.  I

14  was able to see the handgun at that point still.

15  BY MR. SHERMAN:

16  Q.  I see.

17  Now, the man did not go inside that

18  hallway at all?

19  A.  No.

20  Q.  No.  In fact, going inside that hallway,

21  does it possibly go up to any of those three stories,

22  three apartments in that building?

23  A.  There is another closed door inside of that

24  hallway.

1    Q.   Well, did you see whether that closed door

2    was locked?

3        A.   No.   I saw that there was a lock on that

4    door.

5        Q.   Doesn't necessarily mean it is locked, does

6    it?

7            MR. ANDERSON:   Objection, asked and answered.

8            THE COURT:   Overruled.

9    BY MR. SHERMAN:

10       Q.   Doesn't mean it is locked, does it?

11               Lots of doors have locks on them;

12   doesn't mean it is locked?

13           MR. ANDERSON:   Objection, calls for

14   speculation.

15           THE COURT:   Overruled.

16           THE WITNESS:   Right.

17   BY MR. SHERMAN:

18       Q.   At no time from the time that you first saw

19   this man draw a gun did you ever alert your partners

20   even when he was going inside this vestibule --

21   strike that.   I have asked that before.

22               Did you ever make a -- did you ever

23   order this man to stop?

24       A.   Yes, I did.

G-40

1    Q.   You did.  Did you put that in your police

2    report?

3    A.   No, I did not.

4    Q.   In fact, you didn't testify when you were

5    asked by the State what, if anything, did you do, you

6    never mentioned anything about ordering this man to

7    stop, did you?

8         MR. ANDERSON:  Objection.

9         THE COURT:  Overruled.

10        THE WITNESS:  No.

11   BY MR. SHERMAN:

12   Q.   Now, after you stopped this defendant, was

13   he still in the -- he was no longer in that doorway,

14   correct?

15   A.   Correct.

16   Q.   He came towards you?

17   A.   No, he did not.  Well, he took a couple

18   steps away from the door.

19   Q.   What did you do?

20   A.   I approached both individuals.  My partner

21   was right behind me, Officer Carey.

22   Q.   Officer May who always drives, right?

23   A.   Yes.

24   Q.   So you never told any of these men, either

1    of the -- this man or the other man to show you their

2    hands?

3         A.   Yes, I did.

4         Q.   Did you put that in your police report?

5         A    No, I did not.

6         Q.   After you were arresting or detaining both

7    men, did you run their names on -- did anybody run

8    their names on their computer before they were

9    arrested?

10        MR. ANDERSON:  Objection, asked and answered.

11   He mentioned that he did not know when the other

12   person's name was run.

13        MR. SHERMAN:  This is a different question.

14        THE COURT:  The first one was technically a

15   warrant.  Overruled.

16   BY MR. SHERMAN:

17        Q.   Do you know before either man was charged or

18   either man was released whether you ran their names

19   to determine anything about them?

20        A.   I did not.

21        Q.   Did Officer May or Officer Carey do it?

22        A.   I don't know.

23        Q.   Would you say it took at least two or three,

24   maybe five seconds from the time you first saw this

1   man until he threw this handgun into the vestibule of

2   that courtyard, vestibule of that hallway?

3       A.   Yes.

4       Q.   You said you found contraband and those

5   pills and the marijuana.  That marijuana was

6   individually packaged, correct?

7       A.   Yes, it was.

8       Q.   How much money did you find on the

9   defendant?

10          MR. PATTAROZZI:  Objection, relevance.

11          THE COURT:  Sustained.

12  BY MR. SHERMAN:

13      Q.   You found no money on the defendant, did

14  you?

15      A.   I don't know.

16      Q.   Well, would anything refresh your memory as

17  to how much money you found on the defendant?

18      A.   Copy of the case report.

19      Q.   Sure.  Let me mark this as Defendant's

20  Exhibit No. 1.

21          MR. PATTAROZZI:  I just have an objection.  The

22  officer indicated the case reports will fresh his

23  recollection.  I think the officer should look at all

24  the case reports.

1        MR. SHERMAN:  What other are there?

2        THE COURT:  Any particular reason I care how

3   much money he had since it is only possession?

4        MR. SHERMAN:  I understand.  Because he had

5   nothing on him, Judge.  That is why, no money.

6        MR. PATTAROZZI:  We will stipulate that the

7   report will show there was no money recovered from

8   the defendant.

9        MR. SHERMAN:  Thank you.  We have no further

10  questions.

11                  REDIRECT EXAMINATION

12                          BY

13                  MR. ANDERSON:

14      Q.   Sir, when you received the radio

15  transmissions of shots called --

16        THE COURT:  Shots what?

17  BY MR. ANDERSON:

18      Q.   -- shots fired, does that mean that you were

19  the only police car that was assigned to go to that

20  location?

21      A.   No.

22      Q.   When you receive a call shots fired and

23  there is radio transmission going through, one is an

24  address that you received; is that correct?

1        A.    Correct.

2        Q.    And one is other calls are coming in that it
3   is the alley, right?

4        A.    Correct.

5        Q.    Do different cars go to different locations,
6   or do you just in one car try to go to all the
7   locations at once?

8        A.    No.   Different units will go to different
9   areas.

10       Q.    Now, when you write a report pursuant to
11  events that occurred, do you write every single thing
12  that happened in the report or is the report a
13  summary to aid your independent recollection later on
14  in court if needed?

15       A.    The report is a summary.

16       Q.    You didn't write in the report which door
17  you came out of your police car, did you?

18       A.    No.

19       MR. SHERMAN:   Objection, relevance.

20       THE COURT:   Overruled.

21  BY MR. ANDERSON:

22       Q.    Well, do you remember which door you got out
23  of?

24       A.    Yes, I do.

1      Q.  Did you write down in your report which seat

2  you sat in in your vehicle on the way to the call?

3      A.  No, I did not.

4      Q.  Do you remember which seat you sat in?

5      A.  Yes, I do.

6      Q.  You didn't write in your report the length

7  or the depth or how long it took for you to walk to

8  the end of the courtyard, did you?

9      A.  No.

10      Q.  Do you generally write those things down in

11  your report?

12      A.  No.

13      Q.  But you remember those things in court,

14  correct?

15      A.  Correct.

16      Q.  Okay.  Do you write down in your report

17  every time you say to someone stop?

18      A.  No.

19      Q.  But you remember telling the defendant stop,

20  right?

21      A.  Correct.

22      Q.  Because something is not in your report,

23  does that mean that it never happened?

24          MR. SHERMAN:  Objection.  It does, but that is

1    not -- that is not relevant. He certainly can't

2    testify to that. It is an opinion.

3            THE COURT: Overruled.

4            MR. SHERMAN: He said of the report. He didn't

5    say his report.

6            MR. ANDERSON: I will rephrase.

7    BY MR. ANDERSON:

8        Q.   When you write a report, you leave some

9    things out; isn't that correct?

10           MR. SHERMAN: Objection.

11           THE COURT: Rephrase the question.

12   BY MR. ANDERSON:

13       Q.   Do you write every single tiny minutia thing

14   that occurs in your report?

15           MR. SHERMAN: Objection. He already said it is

16   a summary. So obviously it is not going to be a tiny

17   minutia.

18           THE COURT: Sustained. Rephrase.

19   BY MR. ANDERSON:

20       Q.   Just because it is not in your report, does

21   that mean that that thing never ever occurred?

22       A.   No.

23           MR. ANDERSON: Nothing further.

24           THE COURT: Anything further?

1      MR. SHERMAN: Yes.

2              RECROSS-EXAMINATION

3                   BY

4              MR. SHERMAN:

5      Q.  It is a summary, but it is a summary of the

6  important facts in this case, right? I think we

7  would likely lawyers say salient facts, right?

8      A.  Yes.

9      Q.  You don't write stupid things that have

10  nothing to do with this case in that report, do you?

11      MR. ANDERSON: Objection, your Honor,

12  argumentative.

13      THE COURT: Sustained.

14  BY MR. SHERMAN:

15      Q.  Minutia the State said. Okay.

16           It is important that, one, you ordered

17  this defendant to stop and he didn't stop. That is

18  important, isn't it?

19      MR. ANDERSON: Objection, your Honor, as to the

20  importance of what? That he remembers it in court

21  which is the reason why -- would that be important to

22  the defense counsel? Maybe he should sit on the

23  stand.

24      THE COURT: As to that basis, overruled.

1        MR. SHERMAN:  Thank you.

2        THE WITNESS:  Can you repeat the question.

3  BY MR. SHERMAN:

4     Q.  Sure.

5        It is important in your report to write

6  down that you ordered this man to stop and he didn't

7  stop?

8     A.  No.

9     Q.  It is important for you to write down the

10  names and addresses of any witnesses who were present

11  when this occurred?

12     A.  Yes.

13     Q.  It is important for you to state that, in

14  fact, you withdrew your handgun when seeing somebody

15  with a handgun?

16        MR. ANDERSON:  Objection, your Honor.  I am

17  confused.  Is this important for the defendant or the

18  defense because there is only one person writing

19  reports here.  It is the officer.

20        THE COURT:  Overruled.  He is asking that

21  person.  Overruled.

22        THE WITNESS:  Can you repeat that question.

23  BY MR. SHERMAN:

24     Q.  Sure.

*Well why didn't you write down the guy name* ↓

1          It is important for you to write in your

2    police report when you withdraw your handgun?

3       A.   No.

4       Q.   It is not important?

5       A.   No, it is not.

6          MR. SHERMAN:  Okay.  I have nothing further.

7          MR. ANDERSON:  Nothing further, your Honor.

8          THE COURT:  You may step down.

9              (Witness excused.)

10         THE COURT:  State, call your next witness.

11         MR. PATTAROZZI:  Judge, at this time, the State

12   would proceed by way of stipulation.

13         Judge, it would be herein agreed and

14   stipulated between the parties, by the Cook County

15   State's Attorney Anita Alvarez through Assistant

16   State's Attorneys Mark Anderson and Michael

17   Pattarozzi and through defendant Samuel White through

18   his attorney Dennis Sherman.

19         It is hereby stipulated by and between the

20   parties:

21         That if Officer McDevitt, Star No. 13197,

22   were recalled to testify, he would testify that on

23   March 21, 2012, he recovered a clear plastic bag

24   containing 12 knotted plastic bags, each containing a

*(handwritten in left margin)* Everything was supposed to been in one bag as to the reports as states

G-50

```
 1    STATE OF ILLINOIS    )
                           )   SS:
 2    COUNTY OF C O O K    )

 3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
      THE PEOPLE OF THE STATE    )
 5    OF ILLINOIS,              )
                                )  Criminal
 6              Plaintiff,      )
                                )  No.  12 CR 09459
 7        vs.                   )
                                )  Charge: Armed Hab. Crim.
 8    SAMUEL WHITE,             )  BENCH TRIAL
                                )
 9              Defendant.      )

10            REPORT OF PROCEEDINGS had at the trial

11    in the above-entitled cause before the HONORABLE

12    THADDEUS L. WILSON, Judge of said court, on the

13    18th day of December, 2012.

14        PRESENT:

15        HONORABLE ANITA M. ALVAREZ,
              State's Attorney of Cook County, by:
16        MS. LAUREN BROWN,
          MR. MICHAEL PATTAROZZI,
17        MR. MARK ANDERSON,
              Assistant State's Attorneys,
18            appeared on behalf of the People;

19        MR. DENNIS H. SHERMAN,
              appeared on behalf of the Defendant.
20

21

22

      PAMELA M. TERRY, CSR #084-001170
23    Official Court Reporter
      2650 S. California Ave.-4C02
24    Chicago, Illinois 60608
```

I-1

1
2
3

## I N D E X

Date of Hearing:   12-18-12

Pages:   I-1 thru I-11

## PROCEEDINGS

| WITNESSES | DX | CX | RDX | RCX |
|---|---|---|---|---|
| OFFICER ELLIOT FLAGG | 4 | 7 | 8 | 9 |

1      THE CLERK:  People of the State of Illinois

2  versus Samuel White.

3      MR. SHERMAN:  Dennis Sherman.  I represent

4  Mr. Samuel White.

5      THE COURT:  Both sides ready?  This was a

6  commenced and continued bench trial.

7      MR. SHERMAN:  The answer is maybe.

8      MS. BROWN:  Yes, Judge.  I believe we are

9  ready.

10      THE COURT:  All right.  Pass it.

11      MR. SHERMAN:  Okay.

12                  (Whereupon, the case was passed.)

13                  * * * * *

14      THE CLERK:  People of the State of Illinois

15  versus Samuel White.

16      MR. SHERMAN:  For the record, Dennis Sherman

17  representing Samuel White on a trial commenced and

18  continued from November 19th.

19      THE COURT:  All right.  Both sides ready.

20  Counsel is not feeling well today.  Well enough to

21  do this last witness?

22      MR. SHERMAN:  Certainly.

23      THE COURT:  All right.  We can do another date

24  for argument.

                        I-3

1    MR. SHERMAN:  Maybe Thursday of this week.

2    THE COURT:  I won't be here.  Take a seat.

3         This is the State's rebuttal case.

4    Defense has previously rested.  State, call your

5    first witness.

6

7                         (Witness duly sworn.)

8              ELLIOT FLAGG,

9    a witness called on behalf of the People in

10   rebuttal, having been first duly sworn, was

11   examined and testified as follows:

12              DIRECT EXAMINATION

13   BY MR. ANDERSON:

14       Q    Sir, in a loud, clear voice, state your

15   first and last name, and spell your last name for

16   the court reporter.

17       A    Elliot Flagg, E-l-l-i-o-t, F-l-a-g-g.

18       Q    Sir, you are employed by the Chicago

19   Police Department; is that correct?

20       A    Yes, sir.

21       Q    How many years have you been a Chicago

22   police officer, and if you could tell the Court

23   your star number as well?

24       A    In January it will be eight years.

I-4

1   star number is 12037.

2       Q   Sir, on March 21st, 2012 at approximately

3   2230 hours, you were so employed and on duty; is

4   that correct?

5       A   Yes.

6       Q   Were you called to the 6500 block of

7   South California in the city of Chicago for a call

8   of shots fired?

9       A   Yes.

10      Q   Okay.  Did you respond to that 6500 block?

11      A   Yes.

12      Q   And where generally did you go in that

13  6500 block?

14      A   We went in the east alley.

15      Q   And when you went to the east alley of

16  6500 South California, did you see anyone there in

17  the east alley?

18      A   No.

19      Q   Where did you go from there?

20      A   Once we saw there was no one in the alley,

21  we went on the front to check and see if anybody

22  was out in front.

23      Q   Did you go to the courtyard apartment --

24  the courtyard apartments at 6527 South California?

I-5

13 of 28

1    A    Yes.

2    Q    Just briefly tell the Court who you

3  observed in that courtyard.

4    A    Officer Eddie May, Officer McDevitt and

5  their partner, and two male blacks.

6    Q    Okay.  One of the male blacks, if you see

7  one of the other male blacks here in court, point

8  to him and describe an article of his clothing.

9    A    Mr. White in the tan jumpsuit.

10   Q    At any time -- and were you there -- upon

11 going there, when you left, did you leave with the

12 other officers, as well as the Defendant left as

13 well?

14   A    Yes.

15   Q    And at any time when you were there,

16 including the time when the Defendant was brought

17 away, did you happen to ever see any women that

18 were at or near the courtyard?

19   A    No.

20   Q    Okay.  At any time during the radio

21 transmissions, did you ever hear any other

22 transmission of a description of someone in a white

23 T-shirt or dreadlocks or where they would be

24 standing or positioned?

14 of 38

Why you didn't see the Hallway

1     A   No.

2     Q   Just briefly tell the Court what the radio

3 transmission contained.

4     A   It was multiple calls of shots fired,

5 different locations.

6     Q   At any time did you observe any police

7 officers actually go into the buildings in that

8 courtyard?

9     A   No.

10    MR. ANDERSON:  May the record reflect an

11 in-court identification of the Defendant.

12    THE COURT:  In-court identification of the

13 Defendant.

14    MR. ANDERSON:  Tender the witness.

15    THE COURT:  Cross-examination.

16             CROSS EXAMINATION

17 BY MR. SHERMAN:

18     Q   Officer, the call was for shots fired in

19 the east alley at 6500 South California, correct?

20     A   There were multiple calls, sir.

21     Q   Okay.  Were they all directed to the

22 alley?

23     A   Some were on California, I think.

24     Q   Now, you said when you arrived at the

I-7

15 OF 38

*So this officer stady dispute*
*this occupt claims that he found*
*a gun when he didn't.*

1  front of the 6527 you saw this Defendant and

2  another male black and three officers; is that

3  correct?

4      A    Yes, sir.

5      Q    And where were the three officers when you

6  came up?

7      A    They were all standing by the Defendant.

8      Q    And where was the Defendant?

9      A    In the courtyard.

10     Q    Did you ever see the Defendant go inside

11 the building?

12     A    No, sir.

13     Q    Did you ever see police officers recover

14 anything inside the building?

15     A    No, sir.

16     Q    Did you see a handgun that evening?

17     A    No, sir.

18     Q    You didn't?

19     A    No, sir.

20     MR. SHERMAN:  No further questions.

21              REDIRECT EXAMINATION

22 BY MR. ANDERSON:

23     Q    When you got back into the front courtyard

24 of the building, was the Defendant already

*160F 38*

1    handcuffed at that juncture?

2        A    Yes, sir.

3        MR. ANDERSON:  No further questions.

4        THE COURT:  Anything further, Counsel?

5                    RECROSS EXAMINATION

6    BY MR. SHERMAN:

7        Q    You didn't go around and look for any

8    witnesses who were at the scene, did you?

9        MR. ANDERSON:  Objection, your Honor.

10       THE COURT:  Overruled.

11       THE WITNESS:  A  Can you repeat the question?

12   BY MR. SHERMAN:

13       Q    Did you talk to any witnesses that were at

14   the scene?

15       A    No, sir.

16       MR. SHERMAN:  No further questions.

17       MR. ANDERSON:  No further questions, your

18   Honor.

19       THE COURT:  You may step down.

20            Any other witnesses, State?

21       MR. PATTAROZZI:  Judge, we don't believe so,

22   but before we officially rest, if we could just

23   continue it for the arguments.

24       THE COURT:  All right.

I-9

1      MR. PATTAROZZI:   Whatever date is good for

2  Counsel.

3      MR. SHERMAN:   As soon as possible.

4      THE COURT:   How is January 4th or January 11th?

5      MR. PATTAROZZI:   We could do the 4th, Judge.

6      MR. SHERMAN:   Yes, the 4th.

7      THE COURT:   All right.  By agreement,

8  January 4th for commenced and continued bench

9  trial.

10                    (Whereupon, the above-entitled

11                     cause was continued to 1-4-13.)

12

13

14

15

16

17

18

19

20

21

22

23

24

1  STATE OF ILLINOIS  )
                      )
2  COUNTY OF C O O K  )

3

4          I, PAMELA M. TERRY, an Official Court

5  Reporter for the Circuit Court of Cook County,

6  County Department-Criminal Division, do hereby

7  certify that I reported in shorthand the

8  proceedings had at the above-entitled cause; that I

9  thereafter caused the foregoing to be transcribed

10 into typewriting, which I hereby certify to be a

11 true and accurate transcript of the proceedings had

12 before the Honorable THADDEUS L. WILSON, Judge of

13 said court.

14

15

16                    _____
                      Official Court Reporter
17                         #084-001170

18

19

20 Dated this 29th

21 of July, 2013.

22

23

24

                    I-11